Gary L. BOEHM, James L. Daniel, Gerold R. Firestone, Thomas J. Haggerty, Donald L. Jones, Jimmy R. Lewis, Robert N. Madrigal, and Jess J. Thompson, Plaintiffs–Appellants and Cross–Appellees,

v.

KANSAS CITY POWER AND LIGHT COMPANY and W.H. Miller, Defendants–Appellees and Cross–Appellants.

Nos. 87–1438, 87–1462.

United States Court of Appeals, Tenth Circuit.

Feb. 28, 1989.

Michael A. Preston (Gregory J. Pappas with him on the brief), of McDonald, Preston & Louk, Chartered, Overland Park, Kan., for plaintiffs-appellants and cross-appellees.

Stanley E. Craven (David L. Wing with him on the brief), of Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendants-appellees and cross-appellants.

Before MOORE, ANDERSON and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This case involves a dispute about overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19.[1] The principal issue is whether plaintiffs should be paid overtime compensation by their employer for the time that they spend "on call." We conclude that plaintiffs are not entitled to overtime compensation for that time.

Plaintiffs are power-company linemen who claim that they should be paid overtime compensation 24 hours a day (in excess of their base 40 hours per week) because the defendant power company requires them to be available on a stand-by basis to work during storms and other emergencies. It is undisputed that part of the job of being a power-company linemen is the obligation to work overtime when storms and other emergencies occur so that power can be restored as quickly as possible. In the past, whenever a storm or other emergency occurred, the company simply would telephone some or all of its linemen and request that they report for overtime work. Prior to the events leading to the dispute here, the company had no trouble in obtaining sufficient volunteers for those "call-outs."

In 1982, the company and the plaintiffs' union were negotiating a new collective bargaining agreement. As negotiations continued, the union instituted an overtime boycott. When the company required an emergency call-out, the linemen generally were "not home" or had left their telephones off the hook. Because of the boycott, the company was forced to cover all emergencies with non-union supervisory personnel.

On September 19, 1983, in order to counter the boycott, the company instituted a formal call-out policy. The policy basically required linemen to be reachable and to accept call-outs approximately one-third of the time that they were called, or face progressive discipline.

The policy worked like this. The company required each lineman to "report for work an average of at least once for each three counted call-outs made" to the lineman. (R. 1, Exh. B.) The company did not count more than one call-out per calendar day, no matter how many attempts were made to reach the employee during that day. Call-outs were not counted on days when the employee was excused from overtime work, such as days of vacation, restricted duty, jury duty, or when deaths in the family had occurred. Call-outs were not counted if the employee was ill or injured. Only one call-out was counted during a weekend and adjacent holidays (until the employee had accumulated ten counted call-outs). The policy provided for progressive discipline for linemen whose responses fell below the required average. The discipline consisted of step one, a written warning; step two, a three-day suspension and final written warning; and step three, discharge. An employee in any of the progressive disciplinary steps could revert back one step if the employee maintained a satisfactory record for the longer of ten counted calls or one year. Any employee who believed he had extenuating circumstances for missing a call-out could pursue an internal grievance procedure.

The company based the one-third response standard on the average response rate during the pre-boycott years. On February 22, 1984, the company amended the policy to provide that the linemen at any time could leave an alternative telephone

---

1. The Act provides, in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

number where they might be reached if they were not at their usual telephone number.

Approximately 200 linemen filed suit, alleging basically that the September 19, 1983 policy caused them to be "employed ... twenty-four (24) hours per day, seven (7) days a week" and entitled them to overtime pay for that entire period (beyond their base 40 hours per week). (Second Amended Complaint, R. 45 at 7.)[2] The parties agreed to litigate the claims of eight of the 200 plaintiffs as a "test case."

At the outset, the district court denied the company's motion for summary judgment. The district court held that although the policy on its face was not "so restrictive that it can be said that plaintiffs cannot use their off-duty time primarily for their own purposes," plaintiffs had the right to show that the policy as implemented caused them to spend time primarily for their employer's benefit. (Oct. 11, 1985 Order at 5–6.)

In February 1986, the district court held a trial, which resulted in a hung jury. At the end of the trial, the district court granted the company's motion for a partial directed verdict concerning claims arising after February 22, 1984, the date when the company instituted the alternate telephone number policy. The district court held that the company could not be liable for any overtime compensation after that date. In light of that ruling, the district court granted a full directed verdict against one of the plaintiffs, Boehm, because all of his alleged damages occurred after February 22, 1984.

In November 1986, the district court held a second trial. The jury returned a verdict in favor of the company on the claims of five of the eight test plaintiffs (plaintiffs Daniel, Haggerty, Jones, Lewis, and Thompson). The jury returned a verdict in favor of the two remaining plaintiffs, Firestone and Madrigal, for $3,789 and $4,443 respectively. The district court granted remittitur as to plaintiff Madrigal because the jury's award exceeded the amount of lost overtime pay shown by him at trial. The district court entered judgment accordingly.

Plaintiffs appeal from the partial directed verdict against them in the first trial and from the jury verdict against some of them in the second trial. Plaintiffs also assert that the district court erred in ruling upon various motions in limine filed by both sides. Defendants (the company and one of its officers) cross-appeal from the jury verdict in favor of plaintiffs Firestone and Madrigal. Defendants assert that (1) the district court erred by not granting them a directed verdict as to all plaintiffs after the first trial, and (2) the district court erred by not granting them judgment notwithstanding the verdict as to plaintiffs Firestone and Madrigal after the second trial. The district court certified its judgment concerning the claims of the eight test plaintiffs under Fed.R.Civ.P. 54(b).

### Discussion

In our view, this case is controlled by *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653, 654 (10th Cir.1988), in which we concluded that the employees there "should not be compensated for being on call" when they are free to leave their employer's premises and to pursue personal activities. The plaintiffs in *Norton* were van drivers who, during certain times, were required to be "near enough to the employer's premises to be able to respond to [telephone] calls within fifteen to twenty minutes." *Id.* Under the employer's policy in *Norton,* "[i]f a driver fails to promptly respond to a dispatcher's call, he is disciplined by the company. A driver may be fired if he is disciplined three times." *Id.*

Like the plaintiffs here, the plaintiffs in *Norton* filed suit for back pay and overtime compensation for the time that they spent on call. The gist of the complaint in *Norton* was essentially identical to the one here—that the employees were entitled to compensation because the company's on-

---

2. In the alternative, plaintiffs sought "overtime compensation ... [for] the time actually spent at home waiting to be engaged by the overtime callout policy," although it is unclear how that time would be calculated. (Pretrial Order, R. 41 at 4.)

call policy prevented them from using their off-duty time as they wished.[3]

We concluded in *Norton* that the drivers' on-call time was not so restrictive as to amount to working time. We emphasized that the drivers were free to leave the employer's premises and that they had the "opportunity to pursue personal business between assignments, even if being on call does limit their activity." 839 F.2d at 655. We also pointed out that a "simple paging device, which the drivers are free to purchase and to use, would have allayed the necessity of remaining by a phone." *Id.* at 655–56.

*Norton's* analysis comports with the Supreme Court's statement that the test for whether an employee's time constitutes working time is whether the "time is spent predominantly for the employer's benefit or for the employee's." *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). That test requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances. *Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

In order to find error in the district court's denial of defendants' motion for a directed verdict, we must find that the "evidence points but one way and is susceptible to no reasonable inferences supporting the party [opposing the motion]; we must construe the evidence and inferences most favorably to the nonmoving party." *Zimmerman v. First Federal Sav. & Loan Ass'n.,* 848 F.2d 1047, 1051 (10th Cir.1988). Under that standard, we conclude that, although plaintiffs spent some time at home that they otherwise would not have spent because of the company's on-call policy, defendant's call-out policy as written and as applied was not so restrictive that a jury reasonably could conclude that the time was spent predominantly for the employer's benefit. Plaintiffs were free to leave the company's premises and did so. Plaintiffs were free to use their off-duty time as they wished, provided that they could be contacted and report for work one-third of the time that they were called. *See, e.g., Dumas v. King,* 157 F.2d 463, 466 (8th Cir.1946) (engineer at ice house need not be paid overtime for on-call time); *Super-Cold Southwest Co. v. McBride,* 124 F.2d 90, 92 (5th Cir.1941) (refrigerator serviceman need not be paid overtime for on-call time).[4]

---

**3.** Indeed, the arguments of the *Norton* plaintiffs were nearly identical to those made by the plaintiffs in this case. In their brief on appeal, the *Norton* plaintiffs complained that the employer's policy effectively tied them to their homes and telephones:

There are a host of personal, private pursuits that cannot be accomplished due to the strict mandate that on-call drivers be available at a moment's notice to respond to a call. For example, a driver who is waiting on call is effectively precluded from holding another job.... He is unable to take his children to the park to play, or to work on his car for fear he may not hear the phone, or to work on his car and otherwise be [able] to drive it anywhere....

839 F.2d at 654 n. 1. The plaintiffs here make essentially the same arguments in their brief on appeal:

[P]laintiffs ... were not allowed sufficient time for their own personal use; they were not able to secure other employment during the time they were not working during their regular hours; they were tied down to their residences and homes; and further, a portion of the time spent waiting at home by their

telephone for calls from defendants ... has been predominantly for the defendants' benefit.

Pl.Br. at 3–4.

**4.** *See also Boll v. Federal Reserve Bank of St. Louis,* 365 F.Supp. 637, 647 (E.D.Mo.1973) (bank examiners who must stay within a reasonable distance of the bank during non-working hours are not so restricted that they cannot use the time for their own use), *aff'd,* 497 F.2d 335 (8th Cir.1974); Labor Department Interpretive Bulletin No. 13, 29 C.F.R. § 785.17 ("An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call").

The cases cited by plaintiffs are inapposite. In *Campbell v. Jones & Laughlin Steel Corp.,* 70 F.Supp. 996, 997 (W.D.Pa.1947), the employees were required to remain at the employer's plant during their on-call time. In *Aeromotive Metal Products, Inc. v. Wirtz,* 312 F.2d 728, 729 (9th Cir.1963), the employees' off-duty time was so limited in duration that, as a practical matter, the employees could not engage in meaningful personal activities during that time. No restrictions such as those are present here.

The district court properly granted a directed verdict for claims arising after February 22, 1984, and the court should have granted defendants' motion for a directed verdict as to the claims of all plaintiffs at the end of the first trial because, even without the alternate telephone number policy, the defendants' on-call policy was not so restrictive as to entitle plaintiffs to overtime compensation.[5] In reaching that result, we are not persuaded that the district court erred in any of its motion in limine rulings.[6]

Therefore, we AFFIRM the judgment against plaintiff Boehm because the district court properly directed a verdict concerning claims arising after February 22, 1984. We also AFFIRM the judgment against plaintiffs Daniel, Haggerty, Jones, Lewis, and Thompson, but for a different reason than the district court's. We affirm the judgment against those five plaintiffs because the district court should have directed a verdict against them after the first trial. We REVERSE the judgment in favor of plaintiffs Firestone and Madrigal because the district court should have directed a verdict against them after the first trial. We REMAND the case to the district court for entry of judgment against plaintiffs Firestone and Madrigal and for further proceedings consistent with this opinion concerning the claims of the approximately 200 remaining plaintiffs.

---

5. The defendants specifically requested a directed verdict on that ground at the end of the first trial:

> Beyond guess, speculation and conjecture, there is no evidence, or no substantial evidence, demonstrating that the defendants' implementation of the overtime call-out policy caused plaintiffs to spend time away from the Company premises predominantly for the benefit of the defendants. The jury cannot reasonably find from the evidence that defendants are liable to plaintiffs for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207.

> Motion For Directed Verdict, R. 77 at 1.

6. The district court properly granted defendants' motion in limine regarding plaintiffs' desire to introduce evidence concerning various lineman safety concerns. Under the facts of this case, those concerns were not relevant to the issue of whether plaintiffs were entitled to overtime compensation. Further, in light of our affirmance of the directed verdict concerning claims arising after February 22, 1984 and our decision that a full directed verdict against plaintiffs should have been entered after the first trial, the district court properly granted defendants' motion in limine in the second trial regarding events after February 22, 1984. Finally, the district court properly denied plaintiffs' motion in limine concerning evidence of plaintiffs' overtime boycott because the evidence was relevant to the issue of plaintiffs' credibility. In any event, none of the district court's rulings on the motions in limine is material to the ultimate result in this case because, regardless of those evidentiary rulings, we are convinced that the restrictions placed on plaintiffs' off-duty time were not so cumbersome as to cause the time to be spent predominantly for the employer's benefit. *See* Fed.R.Civ.P. 61; 28 U.S.C. § 2111; *Asbill v. Housing Authority of the Choctaw Nation of Okla.,* 726 F.2d 1499, 1504 (10th Cir.1984) ("litmus test for reversal is whether the appellant was ... unjustly prejudiced").

In light of our disposition, we need not address defendants' contention that plaintiffs failed to present adequate proof linking their alleged extra work to any particular 40 hour work week.