Bradford J. BURNISON, et al., Plaintiffs,

v.

MEMORIAL HOSPITAL,
INC., Defendant.

Civ. A. No. 91–1072–MLB.

United States District Court,
D. Kansas.

April 15, 1993.

Ray E. Simmons, Derby, KS, for plaintiffs.

Diane S. Worth, Ken M. Peterson, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, for defendant Memorial Hosp., Inc.

Philip C. Lacey, Gilmore & Bell, Wichita, KS, for defendant City of McPherson, Kan.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant Memorial Hospital, Inc.'s (Hospital) motion for partial summary judgment on the on-call and in-shift meal period claims (Doc. 127), and plaintiffs' cross-motion for partial summary judgment. (Doc. 133)[1]

The Fair Labor Standards Act (FLSA) requires that employers pay their employees overtime for additional hours worked over forty hours per week. 29 U.S.C. § 207(a)(1). The Hospital's motion seeks partial summary judgment on the basis that the on-call periods and in-shift meal periods are noncom-

pensable. Plaintiffs seek partial summary judgment that the two periods are compensable.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue material fact and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c).

## ON–CALL TIME

 The test for determining whether the plaintiffs' time spent on call is compensable under the FLSA is whether the "time is spent predominantly for the employer's benefit or for the employee's." *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). Application of the test "'requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances.'" *Gilligan v. City of Emporia,* 986 F.2d 410, 412 (10th Cir.1993). "'Resolution of the matter involve[s] determining the degree to which the employee could engage in personal activity while subject to being called.'" *Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1537 (10th Cir.1991) (quoting *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653, 654 (10th Cir.1988)), *cert. dismissed* —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). Stated another way, the court must determine whether the restrictions on the employees' on-call time are so burdensome as to render it time predominantly spent for the benefit of the employer. *Gilligan, supra,* at 412.

## THE AGREEMENT OF THE PARTIES

It does not appear that any written agreement exists between the plaintiffs and the Hospital. Nevertheless, the status of the

---

1. In a previous order, the court denied plaintiffs' motion for partial summary judgment on the liability issues and granted the Hospital's cross-motion for partial summary judgment with re-

spect to whether five hours of sleep constitute an "uninterrupted night's sleep" for purposes of 29 C.F.R. § 785.22(a). (Doc. 126)

plaintiffs and their duties is not in dispute. The plaintiffs are twelve present or former emergency medical technicians and paramedics employed by the Hospital, which operates the McPherson Emergency Medical Service (EMS). During the period in question, plaintiffs worked a 25 hour shift, later shortened to 24 hours, during which they had to remain at the hospital. They were paid for 8 hours at the regular rate with a 30 minute unpaid lunch period; 7 hours at the overtime rate (one and a half times the regular rate) with a 30 minute unpaid lunch period; an 8 hour sleep period paid at $\frac{1}{10}$ the regular rate, except when called to active duty, for which they were paid at overtime rates for a minimum of one hour, and if the interruptions prevented them from receiving five hours of uninterrupted sleep, they received overtime rates for the entire 8 hour period; and one hour paid at the overtime rate, plus a $1.00 shift differential.[2] The only issue regarding this 24 hour "first out" duty period is whether plaintiffs are entitled to be paid for their lunch periods.

During the 24 hours following the "first-out" duty period, two members of the three person crew who worked the "first-out" period are "on-call" or "second out." Persons on-call are paid at $\frac{1}{10}$ regular rate unless they are called out. Then they are paid at overtime rates. Plaintiffs contend they are entitled to *full* compensation during the entire 24 hour on-call period.

During the next 24 hours, all crew members are completely relieved of duty. No claim is made for compensation during this period. The cycle then repeats.

**2.** The last category was eliminated when the shift was shortened from 25 to 24 hours.

**3.** In a November 1990 letter sent by plaintiffs' counsel to the Hospital, counsel stated the length of the heightened state of readiness was 1.6 hours per day based upon an average of 3.2 calls per day with an average length of call of ½ hour. Defendants claim that the letter constitutes an admission. Plaintiffs object, arguing that their counsel's statement was part of a settlement offer and therefore is not admissible. Fed.R.Evid. 408. The court agrees with the hospital. Counsel's letter (Doc. 88, Ex. D), is clearly a demand letter. There is nothing in the letter to indicate that plaintiffs' counsel had had any contact with

## NATURE AND EXTENT OF RESTRICTIONS

■ While on call, two members of each crew are given pagers and are not required to remain at the Hospital. They are required, however, to remain within the city limits of McPherson. If an emergency call is received, the on-call employees are notified and go to a heightened state of readiness.[3] If another call is received while the on-duty crew is out, the on-call crew must report to the hospital within five minutes. If the "first out" crew is called beyond the city limits, the on-call crew must report to the hospital without waiting for a second call. Similarly, during inclement weather, the on-call crew must report to the hospital immediately. There is no evidence that these are frequent occurrences, however. Although a record is kept of the response times for statistical purposes, there is no evidence regarding the frequency of reporting times exceeding five minutes and, if that has ever occurred, no employee has ever been disciplined for exceeding the five minute reporting period. The on-call crew is not required to respond in uniform to a "second-out" call. The plaintiffs are permitted to trade on-call time, although there is some dispute regarding how easy it is to do.

The plaintiffs were required to respond, *at most*, to an average of 1.1 and 1.4 calls per 24 hour period of on-call time in 1990 and 1991, respectively. This translates to between 1.1 and 1.4 calls every four days.

The parties agree that during on-call periods, plaintiffs can engage in activities such as watching television, housework, writing letters, listening to music, reading, and running errands. They dispute the extent to which

the hospital prior to writing the letter, much less settlement negotiations. The letter is admissible as an admission of a party's agent. Fed.R.Evid. 801(d)(2)(D). *Ullmann v. Olwine, et al.*, 123 F.R.D. 237, 242 (S.D.Ohio 1987) aff'd 857 F.2d 1475 (6th Cir.1988) *cert. denied* 489 U.S. 1080, 109 S.Ct. 1533, 103 L.Ed.2d 838 (1989) citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372 (10th Cir.1977). Since the court accepts plaintiffs' statement that the on-call crew can be expected to be called 1.1 to 1.4 times per on-call day (Doc. 134, p. 5), the length of the heightened readiness period for each on-call day would be approximately ½ hour.

plaintiffs are restricted from doing things such as having a part-time job, participating in sports, extensive shopping, dirty mechanical or agricultural work and taking part in certain family and social activities.

■■■■ The Hospital contends the Tenth Circuit's recent opinions in *Gilligan v. City of Emporia, supra,* and *Armitage v. City of Emporia,* 982 F.2d 430 (10th Cir.1992), have clarified the law regarding the compensability of on-call time and mandate summary judgment in its favor. Basically, the Hospital's position is that *Gilligan* and *Armitage* make the frequency of calls *the* most important factor in determining whether on-call time is compensable. While the court disagrees that the frequency of calls is paramount, it certainly is an important factor, and in the context of factual situations such as the one presented in *Renfro,* can even be dispositive. Nevertheless, the court believes the correct approach remains to evaluate all of the circumstances surrounding the restrictions on an employee's personal pursuits and to determine whether the time is spent predominantly for the employer's benefit or for the employee's. *See Owens v. Local No. 169,* 971 F.2d 347, 351 (9th Cir.1992).[4] The employee must show his or her free time has been severely restricted for on-call time to be compensable under the FLSA. *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 810 (11th Cir.1992); *See also Norton v. Worthen Van Service, Inc.,* 839 F.2d at 655–56. Nonetheless, some extended discussion of *Gilligan* and *Armitage* is appropriate.

In *Gilligan,* the plaintiffs were employed by the city in the water and sewage departments. As a condition of their employment, they were required to be available to work on-call for certain time periods, with the risk of discipline and legal action for failure to comply. The city supplied the plaintiffs with a pager and required them to remain accessible at all times while on-call. This requirement effectively restricted the plaintiffs to the Emporia city limits. The plaintiffs were prohibited from participating in activities which would prevent them from hearing their pagers, and they avoided paid-entrance activities from which they could be called away.

The plaintiffs argued the case was controlled by the decision in *Renfro,* where the Tenth Circuit held the plaintiff firefighters were entitled to compensation under the FLSA for time spent on-call. *Renfro,* 948 F.2d at 1538. The court disagreed. The court observed that except for *Renfro,* each of the on-call cases it had previously decided[5] had found that although the employees' activities were somewhat restricted by their on-call status, their on-call time was not spent *predominantly* for the employer's benefit. It noted that the frequency of the call backs in *Renfro* was a pivotal distinction in the court's determination that the firefighters' on-call time was compensable. *Id.* at 1537. In *Renfro,* the plaintiffs were called back on average 3 to 5 times per day. In contrast, the plaintiffs in *Gilligan* were called back to duty on average less than one time per day. *Gilligan,* at 412. In the Tenth Circuit's view, the plaintiffs experienced significantly less interference with their personal pursuits than did the plaintiffs in *Renfro,* simply by virtue of the lower frequency of the callbacks. *Id.* The court also noted the plaintiffs had a longer response time, further distinguishing the case from *Renfro.*

In *Armitage,* the plaintiffs were police detectives who sought compensation for time spent on-call. The detectives were on-call for one week at a time every six weeks. They were allowed to do as they pleased while on-call as long as they remained sober,

---

4. The *Owens* court provided the following synthesis of factors other courts considered in determining whether an employee plaintiff had use of on-call time for personal purposes: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. When these factors are applied to the facts of this case, the Hospital clearly prevails.

5. *Armitage v. City of Emporia, supra; Boehm v. Kansas City Power & Light Co.,* 868 F.2d 1182 (10th Cir.1989); and *Norton v. Worthen Van Service, Inc., supra.*

carried pagers and were able to report to duty within twenty minutes if paged. The detectives were called on average less than two times per week. *Armitage*, 982 F.2d at 432. The court held the on-call time was not compensable. The court distinguished *Renfro* on the basis of the nature of the plaintiffs' duties and the frequency of the calls. *Id.*

Under the circumstances of this case, the court finds the frequency of the callbacks is of significance in determining the nature and extent of restrictions imposed during the on-call period. When measured against the factual situations presented in *Renfro, Armitage* and *Gilligan,* the frequency of the callbacks in this case is comparable to the latter two cases and significantly removed from what the *Renfro* plaintiffs encountered.[6] Also, the restrictions placed upon plaintiffs' time while on-call do not seem to be particularly onerous. The plaintiffs are not required to remain at the hospital while on-call.[7] While the five minute response time is short, McPherson is a relatively small city and the driving time distance to the hospital generally would be within the response time. While the plaintiffs contend that the five minute response time restricts the activities in which they may engage while on call, they do not contend that the five minute response time, itself, is unreasonable. The plaintiffs are given a pager. They are notified when the on-duty crew has responded to a call. Although this may result in a heightened expectation of being called out, it also provides, in most cases, some warning which serves to lessen the restrictions imposed by the five minute call back. Although the plaintiffs argue that trading on-call time is difficult to arrange, it is uncontroverted that the hospital allows them to do so.

The court finds the restrictions upon plaintiffs' on-call time are comparable to those faced by the plaintiffs in *Norton v. Worthen Van Service, Inc., supra.* In *Norton,* the plaintiffs were drivers for a van service that transported railroad crews to and from their trains. Drivers worked shifts of 8 to 12 hours per day and were required to be near enough to the employer's premises to enable them to respond to calls within 15 to 20 minutes. Drivers were compensated for their waiting time only if they received a call to transport a railroad crew within two hours of their last call. The plaintiffs were able to spend their time between assignments at the homes of friends, at laundromats, restaurants, pool halls, a local gymnasium, and able to pursue hobbies such as working on guns or physical fitness. *Id.* at 654–55. The court held that although the plaintiffs' employment required a restriction on their personal activities, the plaintiffs were not entitled to compensation for being on-call. *Id.* at 654.

## RELATIONSHIP BETWEEN SERVICES RENDERED AND ON–CALL TIME

■ The relationship between the services rendered by the plaintiffs and their on call time is straightforward. Since the plaintiffs' job is to provide emergency medical care and treatment and, if necessary, to save human life, it is obvious that they must not do anything during their on-call period which would impair their ability to provide emergency medical care if called upon to do so. This, of course, may impose additional restrictions on the plaintiffs' on-call activities. For example, while it does not appear that the plaintiffs are absolutely restricted from consuming alcohol during their on-call period, it seems obvious that the plaintiffs must either abstain from alcohol or at least self-restrict its consumption during the on-call period. Yet absolute prohibitions against alcohol consumption have not resulted in on-call time being found to be compensable. *Gilligan, supra.* Therefore, while the services rendered by the plaintiffs are important and beneficial to the public, the court does not find that the relationship between the services and the on-call time, standing alone, makes the on-call period compensable.

---

**6.** The court strongly disagrees with the plaintiffs' argument that the frequency of the calls is slightly less than in *Renfro* and significantly greater than in *Armitage.*

**7.** According to the regulations promulgated by the Department of Labor, an employee who is not required to remain on the employer's premises but is merely required to leave word where he or she can be reached is considered not working while on call. 29 C.F.R. § 785.17.

## THE CIRCUMSTANCES AS A WHOLE

The court is cognizant of its obligation not to grant summary judgment in the face of disputed issues of material fact. The fact that the parties have filed cross-motions for summary judgment does not lessen this obligation or authorize a trial by affidavits. While at first blush it might seem that disputes of material fact exist with respect to the on-call issue, closer examination shows otherwise. This is because the overarching decision to be made is not whether there are disputed issues of material fact regarding the nature and extent of the restrictions applicable to each plaintiff, but rather whether the restrictions on the employees' on-call time are so severely burdensome as to render the on-call time predominately spent for the benefit of the Hospital. *Gilligan, supra.* Using this standard, it is quite apparent that even when the facts are considered most favorably to the plaintiffs, their on-call time is predominately their own, not the Hospital's.

■ The law in this circuit is clear: the mere fact that the plaintiffs may not use their on-call time as they wish or that they may have to spend some time at home that they otherwise might spend elsewhere is not sufficient to make on call time compensable under the FLSA. *Boehm,* 868 F.2d at 1185. The plaintiffs are not, as they suggest, "tethered" to their homes or to the Hospital. The "tether," if it exists at all, is the five minute reporting time. But the undisputed facts are that in most circumstances, the plaintiffs are forewarned that they may have to report to the hospital within five minutes. These facts, coupled with McPherson's relatively small size, mitigate any inference that the plaintiffs' freedom of movement or ability to engage in activities is so severely restricted by the five minute response time that the plaintiffs' time is not their own. This would be so even if the response time was strictly and punitively enforced, but the undisputed facts show that is not the case. There is no suggestion in the plaintiffs' arguments that they would consider their activities less restricted if the response time was somewhat longer. For example, several of the plaintiffs contend that the five minute call back period limits their ability to participate in family activities such as picnics. Assuming this is true, there is no evidence that a longer period would make such participation materially easier or that it would alter the plaintiffs' argument that they are entitled to full compensation while on call [8], an argument which has not persuaded other courts. *See Bright v. Houston Northwest Med. Center Survivor, Inc.,* 934 F.2d 671, 677 (5th Cir.1991) (en banc) (Whether an employee can use on-call time effectively for his or her own purpose does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that settled case law and the administrative guidelines clearly reject).

■ Consideration of the circumstances as a whole also requires recognition of the undisputed fact that the plaintiffs already are compensated for on call-time. While on call, the plaintiffs are paid $\frac{1}{10}$ their regular rate unless they are called out. Then they are paid their overtime rate. While this undisputed fact, standing alone, does not doom their claim, it does show that the plaintiffs are being compensated for the restrictions caused by on-call status.

■ Finally, it is reasonable to infer (and there is no evidence to the contrary) that the plaintiffs knew when they hired on about the on-call policy and that it would restrict their activities. While this knowledge, by itself, does not mandate judgment for the Hospital, consideration of the circumstances as a whole requires the court to observe that the plaintiffs were not forced to take a job with the hospital or to remain employed there if the on-call policy, *as applied to his or her own circumstances,* operates so restrictively that he or she cannot lead a "normal" life. The court cannot accept the proposition that full compensation for on-call time would make up for otherwise allegedly unreasonable restrictions on individual plaintiffs' lifestyles.

**8.** Obviously, a period of one or two hours might make a difference, but that would be unrealistic given the nature of plaintiffs' job.

In conclusion, the court finds that the undisputed facts show that on-call time is spent primarily for the plaintiffs' benefit and therefore that the Hospital is entitled to summary judgment as a matter of law on plaintiffs' claims for on-call compensation.

## MEAL PERIODS

■ The Hospital also seeks summary judgment on the plaintiffs' claim seeking compensation for the in-shift meal periods.[9] In *Armitage*, the Tenth Circuit reiterated that the proper standard for determining compensability of a meal period is whether the officer is " 'primarily ... engaged in work-related duties during meal periods.' " *Armitage*, 982 F.2d at 432 (quoting *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir. 1992)).

The uncontroverted facts establish that the plaintiffs receive two 30 minute in-shift meal periods during each on-duty shift. They are required to respond to emergency calls during these meal periods. If they are interrupted by a call during the meal, they are paid overtime. The plaintiffs are permitted to leave the Hospital during meal periods and could patronize drive-through restaurants. The only restrictions are that they cannot park their ambulance and go inside a restaurant. Nor, apparently, can they go home to eat (although they can go home to pick up items).

The Hospital contends a finding of noncompensability is mandated by the holdings in *Armitage* and *Lamon*. In *Armitage*, the plaintiffs were police detectives who were required to take an unpaid 30 minute lunch break. They were permitted to eat where they wanted, including at home. They were paid for the time going to and coming from lunch. While at lunch, they were not permitted to consume alcohol and were required to

respond to questions from the public if approached. If called back to duty while at lunch, they were paid at the overtime rate. *Armitage*, 982 F.2d at 431. The court held the plaintiffs were not primarily engaged in work-related duties during meal periods. *Id.* at 432.

In *Lamon*, the plaintiffs were police officers who received a 30 minute meal period. They could only eat at locations within the city limits or in close proximity to the city, and were required to either leave a telephone number where they could be reached or monitor a radio. The officers were required to respond to emergency calls and citizen requests and to confront crimes committed in their presence. They were permitted to conduct personal business errands during this time. The court reversed a jury verdict finding the meal period compensable on the basis that the jury instructions [10] erroneously approved of the view that the performance of *any* official duty during meal periods rendered the time compensable. *Lamon*, 972 F.2d at 1158. According to the *Lamon* court, a police officer must primarily be engaged in work-related duties during meal periods to be entitled to compensation. The mere fact that the officer is on-call and has some limited responsibilities during meal periods does not mandate a finding of compensability. *Id.* at 1157.

The plaintiffs argue *Armitage* and *Lamon* are distinguishable from this case because the plaintiffs are not employees of the state or local government, in contrast to the firefighters or police officers in *Armitage* and *Lamon*, respectively. Plaintiffs contend the meal periods in the other two cases were specifically governed by the regulations found at 29 C.F.R. § 553.223. The parties have stipulated that the regulations found at

---

9. The plaintiffs argue the Hospital "has admitted liability as to owing payment for past meal periods." (Doc. 134, p. 20) As counsel are aware, the court granted the Hospital's motion to withdraw this admission in its previous order. (Doc. 126, p. 10)

10. The erroneous instruction read:
 Unless plaintiffs' meal periods are "bona fide" meal periods under the Fair Labor Standards

Act, plaintiffs' meal periods are compensable work time. Bona fide meal periods are not work time. To qualify as a bona fide meal period, the employee must be completely relieved from duty for the purposes of eating regular meals. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

29 C.F.R. § 785.19 [11] are applicable to this case.

The court agrees with the Hospital that the § 785.19 regulations, not the § 553.223 regulations, were applied in *Armitage.* Although not specifically discussed in the Tenth Circuit's opinion, the district court's opinion cites the § 785.19 regulation in its discussion of the meal period issue. *Armitage v. City of Emporia, Kan.,* 782 F.Supp. 537, 541 (D.Kan. 1992). More importantly, the court does not perceive any material difference between the standards governing the compensability of meal periods for cases where the § 785.19 regulation is applicable as opposed to cases where the § 553.223 regulation is applicable. We draw this conclusion from footnote 18 of the opinion in *Lamon,* wherein the court stated, "[o]ur contrasting of the two sections, § 553.223(b) and § 785.19, does not mean that the 'completely relieved from duty' standard as used in the latter section should necessarily take on a different meaning than that of the former section. *See e.g., Hill v. United States,* 751 F.2d 810, 183–814 (6th Cir.1984) (applying the predominate benefits test to meal periods of letter carrier under § 785.19)."

Our conclusion is buttressed by the holding in *Armitage,* where the court held the meal periods noncompensable despite the fact that the plaintiffs were required to respond to questions from the public if approached and were subject to call. Here, the undisputed facts are that the plaintiffs did not have to perform any work-related duties during their lunch periods. They had limited responsibilities and restrictions (not being able to eat at home and having to eat in the ambulance *if* they chose to leave the hospital for lunch) but these reasonably related to their obligation to be on-call. Section 785.19, which is relied upon heavily by the plaintiffs, is only an advisory resource and, in any event, does not

fit the facts of this case. The limited restrictions and responsibilities of the plaintiffs are not equivalent to an office employee who is required to eat at his or her desk or a factory worker who is required to eat at his machine. This court is obligated to follow the rulings of the Tenth Circuit and it believes the plaintiffs' situation is indistinguishable from *Armitage.* Therefore, the court holds the in-shift meal periods are noncompensable under the FLSA.

## GOOD FAITH DEFENSE

The Hospital has invoked the provisions of 29 U.S.C. § 259(a) to shield it from liability. The plaintiffs argue this affirmative defense should be dismissed as a matter of law. 29 U.S.C. § 259(a) provides in pertinent part:

[N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended ... if he pleads or proves that the act or omission complained of was in good faith and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the agency of the United States specified in subsection (b) of this section [12] ... Such a defense if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

In order to invoke the defense in this case, the Hospital must prove (1) its compensation policies were adopted in reliance on a written interpretation of the FLSA by the Administrator of the Wage and Hour

**11.** 29 C.F.R. § 785.19 provides:

Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide work period. A shorter period may be

long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

**12.** Administrator of the Wage and Hour Division of the Department of Labor.

**558**

Division of the Department of Labor; (2) its policies were in conformity with that interpretation; and (3) it acted in good faith. *Hultgren v. County of Lancaster, Neb.*, 913 F.2d 498, 507 (8th Cir.1990) (Citations omitted).

The Hospital contacted the Wage and Hour Division of the Department of Labor prior to putting the compensation policy at issue into effect, and learned of the applicable regulations. The Hospital contends it acted "in reliance" upon the written regulations. The plaintiffs respond that the Hospital merely relied on its own interpretation of the FLSA when it decided not to compensate the plaintiffs for sleep periods.

 The particular administrative regulation upon which the Hospital claims to rely for its decision not to compensate the plaintiffs for sleep periods, 29 C.F.R. § 785.-22(a), permits an employer to exclude from hours worked a "bona fide regularly scheduled sleeping period ... provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." In the court's view, this regulation is too general to allow the Hospital to assert reliance upon it. *See Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 927 (11th Cir.1987). To establish reliance, the administrative interpretation relied upon must provide a clear answer to the particular situation. *Id.* at 928. The ultimate resolution of the sleep period issue turns upon whether the sleeping facilities are *adequate* and whether the plaintiffs *usually* receive an uninterrupted night's sleep. These are distinctly factual questions upon which the regulation offers no guidance. Allowing the Hospital to assert the good faith defense would permit it to be the judge of its own compliance with the FLSA. The good faith defense was not intended to permit this practice. *Equal Employment Opportunity Commission v. Home Insurance Co.*, 672 F.2d 252, 265 (2d Cir.1982). The purpose of the § 259(a) defense is to protect employers who innocently follow the law as it was laid down to them by government agencies, without notice that such interpretations are erroneous. *Cole*, 824 F.2d at 929 (Citations omitted).

The court holds that the Hospital cannot establish the § 259(a) defense.

IT IS THEREFORE ORDERED that the Hospital's motion (Doc. 127) for partial summary judgment is granted with respect to the plaintiffs' claims for compensation for the on-call time periods and the in-shift meal periods; the plaintiffs' cross-motion (Doc. 133) for partial summary judgment is denied; the plaintiffs' motion to strike the Hospital's good faith defense pursuant to 29 U.S.C. § 259(a) is granted.