82 F.3d 426
 131 Lab.Cas. P 33,366
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert SARMIENTO, Plaintiff-Appellant,
v.
CITY AND COUNTY OF DENVER, a municipal corporation,
Defendant-Appellee.
 No. 95-1225.
 United States Court of Appeals,
 Tenth Circuit.
 April 11, 1996.
 
 Before BRORBY, HOLLOWAY, and HENRY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Robert Sarmiento appeals from an order of the district court granting summary judgment for his employer, the defendant City and County of Denver, on his claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. 201-19. We affirm in part and reverse in part and remand for further proceedings.
 
 
 3
 In his complaint, Mr. Sarmiento alleged he was entitled to overtime compensation for time he had spent on-call. He also alleged he had not entered into a valid agreement to accept compensatory time off in lieu of monetary compensation for overtime hours he actually worked.
 
 
 4
 The district court granted summary judgment to the City and County holding that, while Mr. Sarmiento was inconvenienced by being on-call, his on-call time was not so restricted that he was entitled to compensation. The court also held that because Mr. Sarmiento knew before he began working overtime that he would receive only compensatory time off, he had entered into a valid agreement accepting that method of compensation.
 
 
 5
 On appeal, Mr. Sarmiento argues disputed issues of material fact exist regarding the impact being on-call had on his personal life thus precluding the entry of summary judgment on his first claim. He asserts the agreement that he would receive only compensatory time off was not valid under 29 U.S.C. 207(o ). Finally, he contends the district court erred in sua sponte granting summary judgment on his second claim because the City and County had not sought summary judgment on that claim.
 
 
 6
 We review a district court's order granting summary judgment de novo applying the same standard used by the district court. Universal Money Ctrs., Inc. v. AT & T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). If no genuine issue of material fact is disputed, we then determine whether the substantive law was correctly applied by the district court. Id.
 
 I.
 
 7
 The Fair Labor Standards Act requires that an employer compensate employees for hours worked over forty per week. 29 U.S.C. 207(a)(1). The Supreme Court has held that time employees spend on-call may be compensable. See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944). To determine whether the time an employee spends on-call should be compensated, we look at whether the on-call time "is spent predominantly for the employer's benefit or for the employee's." Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir.1989)(quotation omitted). We consider "the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances." Id.
 
 
 8
 Generally, employees who are free to leave their employer's premises, or are free to pursue personal activities are not considered to be working while on-call. See 29 C.F.R. 785.17, 553.221(d). On-call time is not compensable if employees are free to pursue personal activities, even though those activities are limited by the on-call restrictions. See Norton v. Worthen Van Serv., Inc., 839 F.2d 653, 655 (10th Cir.1988). To be compensable, the restriction on the employee's time must be "so burdensome as to render it time predominantly spent for the benefit of the employer." Gilligan v. City of Emporia, 986 F.2d 410, 412 (10th Cir.1993).
 
 
 9
 The issue of how a plaintiff spends his on-call time is one of fact, Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986), and, therefore, cannot be resolved on summary judgment. However, the determination of whether a plaintiff's activities exclude him "from the overtime benefits of the FLSA is a question of law," id., which can properly be resolved on summary judgment. See, e.g., Renfro v. City of Emporia, 948 F.2d 1529, 1536 (10th Cir.1991)(in granting summary judgment, district court made no factual findings, but relied on undisputed facts), cert. dismissed, 503 U.S. 915 (1992); Berry v. County of Sonoma, 30 F.3d 1174, 1180 (9th Cir.1994)(whether "limitations on the employees' personal activities while on-call are such that on-call waiting time would be considered compensable overtime under the FLSA is a question of law ...."), cert. denied, 115 S.Ct. 1100 (1995).
 
 
 10
 The facts show Mr. Sarmiento pursued personal activities, even though he felt constrained in what he did and his activities were interrupted by call-backs. In his deposition, Mr. Sarmiento stated he was "pretty much" told to stay within the range of the pager unless he found someone to cover for him. He stated he felt like he could not attend functions, but did not really miss out on going to places, aside from giving up skiing because of the geographical limitation of the pager. Mr. Sarmiento felt like he was always on call.
 
 
 11
 During snow storms, Mr. Sarmiento might be called nightly to plow library parking lots. That call-back could last all night. Call-backs were less frequent during other times, although he was called five or six times one week to fix a booklift.
 
 
 12
 Mr. Sarmiento was required to respond anywhere from within thirty minutes to two hours depending on the type of call. His supervisor stated in his deposition that Mr. Sarmiento was to respond as soon as possible.
 
 
 13
 Mr. Sarmiento testified both that he could not remember being told what would happen if he did not respond immediately to the pager and that there was no discipline for not answering the pager. His supervisor stated that if Mr. Sarmiento did not respond to the pager, he would have accepted almost any excuse as long as he did not feel Mr. Sarmiento was showing blatant disregard for his job and insubordination.
 
 
 14
 Mr. Sarmiento could ask not to be on call when he wished and that request would be honored. Mr. Sarmiento asserts he did not ask others to cover for him and he restricted his movements to stay within a range he deemed appropriate. Mr. Sarmiento's devotion to duty cannot change the fact that his employer did not impose those requirements on him. An employee cannot unilaterally change the employer's requirements to ensure that he is entitled to relief under the Act.
 
 
 15
 Viewing the evidence in the light most favorable to Mr. Sarmiento, as we must, we are not persuaded that Mr. Sarmiento has presented evidence sufficient to survive summary judgment. The restrictions experienced by Mr. Sarmiento do not show that he was "engaged to wait," but rather that he "waited to be engaged." See Skidmore v. Swift & Co., 323 U.S. 134, 137 (1944). Compare Renfro, 948 F.2d at 1531-32 (on-call time compensable because fire fighters averaged four to five callbacks a day; had to respond within twenty minutes; shift trades were difficult, if not impossible, to arrange; and they were subject to discipline if they either failed to answer a call-back or were late) with Gilligan, 986 F.2d at 411-13 (on-call time not compensable because plaintiffs were called back less than once a day, were given thirty minutes to one hour to respond, and were free to pursue personal activities with little interference while waiting to be called); Boehm, 868 F.2d at 1183, 1185 (on-call time not compensable where employees could use their time as they wished provided they responded to one third of the calls, even though discipline was imposed for those whose responses fell below the required average); Norton, 839 F.2d at 654-56 (on-call time not compensable as employees were free to pursue personal activities and could "go unavailable," even though disciplinary action occurred if employee failed to respond within fifteen to twenty minutes of a call).
 
 II.
 
 16
 Mr. Sarmiento argues the agreement that he receive only compensatory time was not valid under 29 U.S.C. 207(o ). Prior to working overtime, Mr. Sarmiento understood he would be compensated only with time off. He asserts, however, that he must have entered the agreement to accept compensatory time voluntarily, which he did not do.
 
 
 17
 A public employer who wishes to provide its employees compensatory time off in lieu of monetary compensation for overtime work must enter into an agreement or understanding with the individual employee prior to the performance of the work. Id. 207(o )(2)(ii);[2] see also 29 C.F.R. 553.23(a)(1). Further, the employee's decision to accept compensatory time off in lieu of overtime pay must be made knowingly and voluntarily, 29 C.F.R. 553.23(c)(1)(i), and the employee must be informed that compensatory time may be "preserved, used, or cashed out," 20 C.F.R. 553.23(c)(1)(ii); see also Nevada Highway Patrol Ass'n v. Nevada, 899 F.2d 1549, 1556 (9th Cir.1990), opinion superseded by 968 F.2d 1221, 1992 WL 149860, at * * 3 (9th Cir. July 1, 1992)(No. 88-15642)(employees must explicitly agree to accept compensatory time off and must be aware of their right to choose that type of compensation for the overtime hours worked).
 
 
 18
 Whether the agreement between the City and County and Mr. Sarmiento met these conditions is a disputed question of material fact on the record before us. The evidence shows Mr. Sarmiento's supervisor was told that if employees did not want to take compensatory time off, they could find another job. The supervisor also testified he did not negotiate with the employees about this issue because the City and County could not afford to pay for overtime compensation and, thus, only compensatory time off was available. The district court erred in granting summary judgment on this claim.
 
 III
 
 19
 Because we are reversing on Mr. Sarmiento's second argument, we need not address his contention that the district court erred in granting summary judgment on his second claim as the City and County had not sought summary judgment on that claim. We do note that although the City and County did not move for summary judgment on Mr. Sarmiento's second claim, Mr. Sarmiento sua sponte addressed the issue in his response to the City and County's motion for summary judgment on the first claim. Thus, the district court did not grant summary judgment on the claim without notice that such judgment was contemplated. See Hand v. Matchett, 957 F.2d 791, 794 n. 2 (10th Cir.1992)(district court properly ruled on a motion for summary judgment sua sponte where record showed parties had adequate opportunity to address all pertinent issues before the court issued its decision).
 
 
 20
 We AFFIRM the judgment of the United States District Court for the District of Colorado in part and REVERSE in part and REMAND this case for further proceedings in accordance with this order and judgment.
 
 
 21
 HOLLOWAY, Circuit Judge, concurring and dissenting:
 
 
 22
 I agree that we must reverse the grant of summary judgment on the issue whether there was a valid agreement between the City and Sarmiento that Sarmiento would accept compensatory time off in lieu of monetary compensation for his overtime work. However, because I am convinced that there are genuine issues of material fact as to whether Sarmiento's "on-call" time was compensable, I dissent from the majority's conclusion that summary judgment in favor of the City was appropriate on the claim for compensation for on-call time.
 
 
 23
 "The regulations provide that on-call time is compensable if the employee is required to remain on the employer's premises, 29 C.F.R. 785.17, and if on-call time spent off premises is so restricted that the employee cannot use the time effectively for personal pursuits, 29 C.F.R. 553.221(d)." Gilligan v. City of Emporia, Kansas, 986 F.2d 410, 412 (10th Cir.1993). To determine whether on-call time is compensable we must ascertain the degree to which the employee could engage in personal activity while subject to being called. Id. "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." Skidmore v. Swift & Co., 323 U.S. 134, 137 (1944). The test is whether the employee's "time is spent predominantly for the employer's benefit or for the employee's." Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944). The question of how the plaintiff's time was spent is a question of fact. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). "Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court." Armour, 323 U.S. at 136-37. Of course, in some instances the facts may be so clear and one-sided that summary judgment, one way or the other, is permissible.
 
 
 24
 In Renfro v. City of Emporia, Kansas, 948 F.2d 1529 (10th Cir.1991), cert. dismissed, 503 U.S. 915 (1992), we concluded that the plaintiffs, firefighters, were entitled to compensation for their on-call time:
 
 
 25
 Firefighters in this case were required to report to a callback within twenty minutes, and to answer each callback or be subject to discipline (they were subject to discipline also if they were late to a callback); and they were not compensated for any of the waiting time. The on-call shifts were 24 hours in length and the average number of callbacks was 3-5 times per 24-hour period.
 
 
 26
 Id. at 1537. We noted that the district court in Renfro had relied on the frequency of call-backs as an important factor in distinguishing the firefighters' situation from that of the plaintiffs in Boehm v. Kansas City Power and Light Co., 868 F.2d 1182 (10th Cir.1989), and Norton v. Worthen Van Service, Inc., 839 F.2d 653 (10th Cir.1988). Renfro, 948 F.2d at 1537.[3] We also noted that "[f]irefighters must be alert and ready to protect the community, and the time firefighters spend lying in wait for emergencies could be considered a benefit to the employer and thus compensable under FLSA." Id. at 1538. However, the firefighters were not required to remain on the stationhouse premises. Id. at 1532. Based on these facts we upheld the district court's grant of summary judgment in favor of the firefighters.[4]
 
 
 27
 In Gilligan, the plaintiffs, like Sarmiento here, were city workers who were required as a condition of their employment to be on call. Both plaintiffs were given pagers and were required to respond to calls within one hour (one plaintiff was required to respond within 30 minutes). Neither worker could consume alcohol while on call. Both were required to stay within pager range or to leave a telephone number where they could be reached. Both had to avoid activities which would keep them from hearing their pagers. One of the plaintiffs was required to respond to calls in a city vehicle but could not use the vehicle for personal purposes, which inhibited his response time. He was allowed to trade on-call time with other employers with prior supervisor approval. 986 F.2d at 411.
 
 
 28
 On cross-motions for summary judgment the district court held that the plaintiffs on-call time was not compensable. We affirmed, reasoning that the case was similar to our other decisions where overtime claims failed. We said "though plaintiffs' activities may be somewhat restricted while they are on call, the restrictions are not so prohibitive that it can be said that their on-call time is spent predominantly for the employer's benefit." 986 F.2d at 413. We also noted that "plaintiffs are free to pursue personal activities with little interference while waiting to be called." Id.
 
 
 29
 The facts in Sarmiento's case fall somewhere between Renfro, which allowed recovery, and our other cases where we held the on-call time not compensable. Construing the record in the light favorable to Sarmiento, as we must in reviewing this summary judgment, we note that there was evidence indicating the following facts: Beginning in 1989, Sarmiento was required to carry a pager with him after hours, Appellee's App. at 60, and was required to be within pager range. Id. at 62. Sarmiento's supervisor, Derrick, provided Sarmiento with a pager in 1989, which he was required to wear while off duty. The pager permitted Derrick to contact Sarmiento to work on library vehicles, repair book lifts, plow snow or conduct various other emergency repairs after hours. District Court Order at 1, citing Derrick Deposition at 7. Sarmiento was paged sometimes on a nightly basis, Appellant's App. at 38, and was required to respond to a page "as soon as possible." Id. at 38-39. He lived within 5 to 30 minutes of any potential work site. Appellee's App. at 28. He sometimes was authorized to take the city vehicle home with him so he could leave directly from home with the vehicle. Appellant's App. at 39. He would be on a job site anywhere from 15 minutes to 2-3 hours and sometimes longer. Appellee's App. at 11-12. When doing snow removal, Sarmiento would sometimes work from midnight to sun up. Id. at 12.
 
 
 30
 Sarmiento never failed to respond to a page. Id. at 30-31. He was more likely to be paged than Joe Zavilla, the other employee capable of doing the same tasks as he. Id. at 50. When Sarmiento went out he was called back by the pager more often than not. Id. at 98-99. The pagers would not work in the mountains, Appellant's App. at 41, and Sarmiento testified that he gave up skiing, an activity that he previously engaged in every other weekend. Id. at 57. He stated that he was paged during religious activities, family outings, and movies, id. at 58, and that he felt like he couldn't leave home, like he didn't have the freedom he should have because of the pager. Appellee's App. at 73, 77. Bill Derrick, Sarmiento's supervisor, agreed that it would have been insubordination to refuse to respond to a page. Appellant's App. at 67. Joe Zavilla described the pager as an "electronic leash." Id. at 70.
 
 
 31
 I am persuaded that the evidence in the record, viewed in the light most favorable to Sarmiento, is sufficient for Sarmiento's claim for on-call compensation to survive summary judgment. Here, as in Renfro, there is evidence that Sarmiento was called in on a nightly basis at times, sometimes from midnight to sun up. This frequency, coupled with the long periods of time spent complying with a call, create a triable issue of fact concerning the extent of the intrusion into Sarmiento's personal life. See Icicle Seafoods, 475 U.S. at 714 (how the plaintiff's time was spent is a question of fact). From the record it can be inferred that there were periods where Sarmiento knew he would be paged every night. This fact along with the fact that Sarmiento's supervisor, Mr. Derrick, asked him at times to take the city vehicle home with him indicates that Sarmiento was "engaged to wait" rather than "waiting to be engaged." Skidmore, 326 U.S. at 137. There were underlying factual disputes precluding summary judgment as, for example, from Sarmiento's specific testimony that Derrick told Sarmiento that "I have to be within the range of the beeper to respond to calls," Appellant's App. at 56, while Derrick testified he "did not" ever instruct Sarmiento that while off his regular shift, he could not travel outside the range of the beeper. Appellee's App. at 34.
 
 
 32
 In sum, I am convinced that there were genuine issues of material fact on Sarmiento's claim for compensation for on-call time. Ultimately, Sarmiento may not prevail on this claim. However, he has made a sufficient showing to entitle him to be heard at trial, and I would therefore reverse the grant of summary judgment to the City on this claim.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Section 207(o )(2)(i) permits an employer to enter into an agreement with the employee's representative. Mr. Sarmiento states he had no such representative and, therefore, 207(o )(2)(ii) applies
 
 
 [3]
 We did note, however, that neither Norton nor Boehm indicated what the frequency of call-backs was for plaintiffs in those cases. Renfro, 948 F.2d at 1537
 
 
 [4]
 The decision of the district court in Renfro was made on cross-motions for summary judgment. As we noted, the district judge there concluded that the relevant facts were undisputed. Renfro, 948 F.2d at 1537