Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Petitioner,

v.

WHITE BEAUTY VIEW, INC., a Corporation, and Leroy B. Guccini, Individually and as President of Respondent Corporation, Respondents.

Civ. No. 80–0329.

United States District Court, M.D. Pennsylvania.

Dec, 10, 1982.

---

Marshall Harris, Dale J. Belock, U.S. Dept. of Labor, Philadelphia, Pa., for petitioner.

Steven Guccini, William Gumble, Gumble, Thomson & Linshaw, Paupack, Pa., John Mascelli, Scranton, Pa., for respondents.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

In this action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq., the Secretary of Labor seeks to have respondents, White Beauty View, Inc., and Leroy B. Guccini, Corporate Secretary-Treasurer, adjudicated to be in contempt for violating the provisions of a Consent Decree entered by this court on March 9, 1981. Specifically, the Secretary seeks to recover $5,442.24 in back wages due certain employees for failure to pay overtime from March 1981 through December 1981, a similar amount of liquidated damages for will-

ful violation of the Act and all other costs incurred in this action. A hearing was held October 12, 1982, and evidence received from which the court makes the following

## FINDINGS OF FACT

1. Jurisdiction of this action is conferred upon the Court by Section 17 of the Act.

2. Respondent, White Beauty View, Inc., has at all times relevant hereto, maintained an office and a place of business located at White Beauty View Resort, R.D. 1, Greentown, Pennsylvania 18426, within the jurisdiction of this court, where it is engaged in the operation of a year-round resort facility in the Pocono Mountains, including a motel, restaurant and related facilities.

3. Respondent, Leroy B. Guccini, is and at all times hereinafter mentioned was, the Secretary of the aforesaid White Beauty View, Inc., and is the person responsible for the employment practices and policies of the said corporation and is an employer within the meaning of Section 3(d) of the Act.

4. The business activities of the respondents, as described herein, are related and performed through unified operation of common control for a common business purpose and constitute an enterprise within the meaning of Section 3(d) of the Act.

5. At all times hereinafter mentioned, respondents have employed and are employing employees in and about their places of business in the activities of said enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Said enterprise, at all times hereinafter mentioned, has had an annual gross volume of sales made or business done in an amount not less than $362,500.00. Therefore, the said employees are employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the Act, and/or Section 3(s)(2) of the Act as amended, 91 Stat. 1251 Public Law 95–151, November 1, 1977.

6. On March 31, 1980, pursuant to the authority vested in him by Section 17 of the Act, the Secretary of Labor, United States Department of Labor, instituted an action to restrain the said respondents, their officers, agents, servants, employees and those persons in active concert or participation with them, from violating the provisions of Sections 7, 11(c), 15(a)(2) and 15(a)(5) of the Act.

7. On March 9, 1981, this court entered a final Judgment, consented to by the respondents, permanently enjoining and restraining the respondents, their officers, agents, servants, employees and all persons acting or claiming to act in their behalf and interest, from violating the provisions of Section 7, 11(c), 15(a)(2) and 15(a)(5) of the Act.

8. Respondent, White Beauty View, Inc., had full knowledge of the existence of this Judgment and of the contents and terms by virtue of the fact that Leroy B. Guccini, Secretary of said Corporate respondent, executed and signed the consent to the entry of the Judgment on behalf of said corporation as Secretary thereof.

9. Respondent, Leroy B. Guccini, has full knowledge of the existence of the Judgment and its contents and terms by virtue of the fact that he executed and signed the consent to the entry of this Judgment, individually and as Secretary of the corporate respondent.

10. Respondents satisfied the backwage portion of the March 9, 1981 Order of this court, by restoring backwages to their employees in the gross amount of $8,000.00.

11. However, commencing in April 1980, Mrs. Jean Christman, Bookkeeper in the respondents' Lakeview Dining Room, pursuant to instructions from her predecessor, Kathy Lee Lawson, began to accumulate overtime hours for each employee in a separate record book but would not include such overtime hours in the official time records which would be submitted to the Corporate office for payroll purposes.

12. As a result of this practice, an employee received no overtime wages but would receive time off for such overtime

hours at the base, or minimum wage rate of $3.35 per hour.

13. On March 6, 1981, Mrs. Christman was directed by Mr. Barry Box, Operations Manager for Corporate respondent, to accumulate all overtime hours worked by a Dining Room employee during the first week of the two-week pay period, without entering it in the time records, and credit such hours as straight time in the following week. If any overtime hours remained after the second week, she was directed by Mr. Box to compute them at a two-thirds rate, thereby treating all overtime as straight time. For example, if 9 hours of overtime were worked during the two-week pay period, she would show in the records 6 hours of overtime at time and a half and not include the remaining 3 hours. The net result was that 9 hours of overtime would be paid at the straight time rate.

14. When Mrs. Christman left Corporate respondent's employ in October 1981, she explained the concealment procedure to her successor, Leonard Masker, who continued in the same manner.

15. In November 1981, Mr. Masker inquired of Mr. Box as to whether this procedure should continue and was told by Mr. Box that the true number of overtime hours should not be included but that a two-thirds rate should be utilized to show that some overtime was being paid inasmuch as the U.S. Department of Labor had been aware of prior overtime violations.

16. Mr. Box occupied a position of corporate authority, had supervisory duties over the dining room operation and acted on behalf of the Corporation in willfully and fraudulently devising the plan of overtime concealment.

17. There is no competent evidence in the record indicating that respondent Leroy B. Guccini participated in, or was aware of, this concealment policy.

18. Inasmuch as the time and a half computation was based on the minimum wage of $3.35 per hour ($2.01 salary and $1.34 tips), respondents cannot reduce an overtime award by a tip credit.

19. Respondents cannot claim any more time deductions for the period during which dining room employees were eating meals provided by respondents as (a) there was no policy under which an employee's time would be reduced for this purpose; (b) no records were kept from which the appropriate amount of time could be computed; and (c) the Government allowed some time, acceptable under the circumstances, for such eating period.

## DISCUSSION

■ The record amply demonstrates a calculated scheme, engineered by a prominent corporate official, to deprive the Lakeview Dining Room employees of the overtime benefits provided for under the Act. In light of the injunction by this court then in effect, the violation by Mr. Box was a flagrant one. His misconduct is imputable to respondents, his statutory employers.

■ There has been no showing that the Corporation had reasonable grounds for believing that Box's actions did not violate the Act and, consequently, an additional award of liquidated damages under 29 U.S.C. § 216(b) is fully warranted. *Marshall v. Brunner,* 668 F.2d 748 (3d Cir.1982). However, as to Leroy B. Guccini, individually, I reach a different conclusion on the liquidated damages issue. I am satisfied that there is no credible evidence linking him to the scheme. Under the Portal-to-Portal Act, 29 U.S.C. § 260, the court has discretion to award no liquidated damages if persuaded that an employer acted in good faith and had reasonable grounds for believing that he was not violating the Act. As to the good faith requirement, I believe Mr. Guccini was a sincere credible witness and accept his testimony that he was unaware of Mr. Box's machinations and thought that the Act and the prior order of this court were being complied with. Objectively, the testimony indicated that Mr. Guccini had nothing to do with the compilation, supervision, or review of the time and payroll records. Additionally, although there were nine separate departments in the resort operation, the Lakeview Dining Room was the only

one in which violations were found. If there had been a corporate-wide intention to circumvent the overtime provisions of the Act, then it would be expected that some of the other departments would be similarly implicated. This fact provides corroborative support for my conclusion that Mr. Guccini should be absolved from the award for liquidated damages.

■ Concerning the computation of hours worked, the petitioner produced the time records kept by Mrs. Christman which indicate the number of hours worked by each employee according to the time the employee signed in for work and signed out when work was completed. While employees were entitled to receive meals during the workday, there was no record showing to what extent employees took advantage of this entitlement and how much time was expended while eating. There was testimony that some employees did not eat meals, especially during busy periods, and that others ate "on the run" while working. Because of the absence of records revealing the actual time spent by employees for meals, it would be pure speculation for me to attempt to reconstruct the appropriate amount of meal-time credit. When records are incomplete, the employer cannot complain of the adverse consequences visited upon him for the failure to maintain precise records as required under the Act. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). The meal credit time allowed by the Department of Labor Investigator, therefore, though not generous, has not been effectively refuted.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and the subject matter of this action.

2. Failure of respondents to compensate their employees at a rate of time and a half of their regular rate for hours worked over 40 in a workweek violated Section 7 of the Fair Labor Standards Act for which they are legally obligated in the amount of $5,442.24.

3. Respondent, White Beauty View, Inc., through Operations Manager Barry Box, is legally obligated to pay an equal amount of $5,442.24 in liquidated damages.

4. Respondents are adjudged to be in contempt of this court's order of March 9, 1981.