45 F.3d 439
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Karen BROWN; Robert L. Colbert; James B. Dahl; Tricia
Diaz; David Ewoldt; Terry L. Fonzi; Stephen D. Forshee;
Berlinda G. Hill; Bob R. Jennings; Betty Jean Lamb; J.B.
Loftis, Jr.; Carl Purser; Kristi S. Riley; Carla S.
Roberson; Darlene R. White, Plaintiff-Appellants,
v.
CITY OF OKLAHOMA CITY, Oklahoma, a municipal corporation,
Defendant-Appellee.
 No. 93-6389.
 United States Court of Appeals, Tenth Circuit.
 Dec. 23, 1994.
 
 Before MOORE, MCWILLIAMS, and ANDERSON, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Garcia v. San Antonio Metropolitan Transit Auth., 469 U.S. 528 (1985), extended the Fair Labor Standards Act, 29 U.S.C. 201 et seq., to state and municipal employees, requiring the City of Oklahoma City to revise the work schedules of its firefighter dispatchers to comply with the overtime provision of 29 U.S.C. 207(a)(1).[2] This lawsuit challenged the resulting calculation of overtime compensation paid to firefighter dispatchers over the following six years. Finding no factual basis to the complaint, the district court granted the City's motion for summary judgment. We conclude there are conflicting, and thus unresolved, facts relating to whether the parties reached a meeting of minds. We therefore reverse.
 
 I.
 
 2
 Essential to the collective bargaining negotiations undertaken in the summer of 1986 by the City and the International Association of Firefighters, Local 1524, (the Union), the certified agent for Oklahoma City firefighters and firefighter dispatchers, was the desire to preserve the 24-hour shift of fire suppression and dispatching employees. To maintain this schedule, avoid hiring more dispatchers, and control overtime expenditures, the City insisted sleep and meal times would have to be deducted from the total number of hours worked.
 
 
 3
 Although the resulting schedule was not memorialized in their collective bargaining agreement, firefighter dispatchers were officially designated 207(a) employees and clocked their hours "on the board" and "off the board,"[3] completed their time sheets, and received overtime compensation based on that schedule. In a two-week work cycle, firefighter dispatchers continued to work two 24-hour shifts the first week, and three 24-hour shifts the second week. A dispatcher would earn two hours of overtime pay for the three-shift week. That is, in a 24-hour shift during a three-shift, seven-day week, the dispatcher clocked 14 hours "on-the-board," straight time, or on duty, and 10 hours of sleep and meal time. These three shifts with 14 hours on-the-board per shift totalled a 42-hour work week, or two hours of overtime.
 
 
 4
 Typically during a 24-hour period, a dispatcher worked two 5-hour shifts and two 1-hour shifts on-the-board and had two 5-hour sleep times and two 1-hour meal breaks. If a dispatcher was called back during the first 5-hour sleep time, he was credited with 3 hours of overtime compensation. If called back during the second rest period, the entire 5 hours was credited for a total of 8 hours of overtime compensation. For six years from 1986-1992, the time sheets and paychecks of firefighter dispatchers reflected this schedule.
 
 
 5
 However, in 1992, the City and Union agreed to eliminate the firefighter dispatchers' 207(a) classification. Karen Brown and fourteen fellow Oklahoma City firefighter dispatchers, plaintiffs, then sued Oklahoma City for violations of the FLSA overtime requirements, seeking a declaration the defendant City wilfully violated the FLSA, an accounting of the unpaid overtime hours, and an award of back pay and liquidated damages for the unpaid overtime. Plaintiffs claimed in the absence of their express or implied agreement to deduct rest and meal times, the City wrongfully refused to pay them overtime for those hours.
 
 
 6
 To the district court, resolution of the dispute on cross-motions for summary judgment turned on whether there was an express or implied agreement to exclude uninterrupted sleep and meal time from the hours worked. Enumerating the instances in which representatives from the City and Union met to discuss the schedule; quoting excerpts from minutes of some of those meetings and deposition testimony; and emphasizing the six years dispatchers followed this schedule and submitted time sheets without filing a complaint or grievance, the district court concluded the totality of the circumstances indicated that while there was no express agreement on overtime compensation, there was an implied agreement to deduct uninterrupted sleep and meal time.
 
 II.
 
 7
 Under 207(a)(1), employees who work more than 40 hours in one week must ordinarily be paid overtime. An employee's right to minimum wage and overtime pay under the FLSA is nonwaivable. Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740 (1981). In Tennessee Coal, Iron & Rail Co. v. Muscoda Local No. 123, 321 U.S. 590, 602-03 (1944), the Court stated,
 
 
 8
 The Fair Labor Standards Act was not designed to codify or perpetuate customs and contracts.... Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.
 
 
 9
 Plaintiffs tether their claim to the regulations interpreting 207(a), in particular, 29 C.F.R. 785.22, which states,
 
 
 10
 (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.
 
 
 11
 (emphasis added). Plaintiffs contend there was no express or implied agreement to deduct sleep and meal times, requiring the City to credit them with 8 hours of sleep and meal times as overtime compensation. Because the district court decided cross-motions for summary judgment, we review the order de novo. Pleasant Valley Hosp., Inc. v. Shalala, 32 F.3d 67, 69 (4th Cir.1994).
 
 
 12
 The question before us is whether the district court correctly held there was no genuine issue of material fact an implied agreement existed precluding the granting of summary judgment for the City. We do not believe the City met its burden.
 
 
 13
 Under Oklahoma law, the precursor for any contract, express or implied, is a meeting of the minds of the parties. Watkins v. Grady County Soil and Water Conservation Dist., 438 P.2d 491 (Okla.1968). If there is mutual assent, that which is given for a certain consideration may be memorialized in a written agreement or implied from the course of conduct of the parties. The Oklahoma Supreme Court has stated:
 
 
 14
 An implied contract is a contract implied in fact, or, in the proper sense, one which arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.
 
 
 15
 Ray F. Fischer Co. v. Loeffler-Green Supply Co., 289 P.2d 139, 141 (Okla.1955).
 
 
 16
 To find an implied contract here, the district court relied on the "Oklahoma City Fire Department Dispatcher's Daily Work Cycle F.L.S.A.," Exh. 2,[4] and excerpts from a negotiating session involving the Union's consultant and the City's representative.[5] While neither document evidences a meeting of the minds to deduct sleep and meal times according to 785.22, each establishes the parties discussed the subject and attempted to come to an agreement.
 
 
 17
 To fill that gap, however, the district court added the circumstance of the six years firefighter dispatchers worked without protest creating "an implied term and condition of employment by mutual consent of the parties." Intermountain Rural Elec. Ass'n v. NLRB, 984 F.2d 1562, 1568 (10th Cir.1993). That circumstance, too, placed this case within the ambit of Bodie v. City of Columbia, S.C., 934 F.2d 561, 563-66 (4th Cir.1991), the district court stated, where the Fourth Circuit held that a firefighter's continued employment, receipt of pay checks, and failure to protest the city's overtime policies created an implied contract.
 
 
 18
 Plaintiffs urge this conclusion was in error: first, because there was no agreement ever reached between the Union and the City; and, second, because it relies on resolving controverted facts on the issue of what the parties understood to establish the antecedent mutual assent. We agree, particularly in the context of the FLSA.
 
 
 19
 First, "[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them." Johnson v. City of Columbia, S.C., 949 F.2d 127, 129-30 (4th Cir.1991) (quoting Donovan v. Brown Equip. & Serv. Tools, Inc., 666 F.2d 148, 153 (5th Cir.1982). Therefore, to fall within the express language of 785.22, the employer has the burden of proving the agreement to exclude sleep and meal times. Mitchell v. Kentucky Fin. Co., 359 U.S. 290, 291 (1959).
 
 
 20
 Section 785.22 states, "the employer and the employee may agree to exclude bona fide meal periods," and "where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." The Ninth Circuit, addressing the first clause of this section, stated, "The regulation does not say such an agreement may be implied" in the absence of the parties express agreement to deduct these hours. Service Employ. Union Local 102 v. San Diego, 35 F.3d 483 (9th Cir.1994). In Service Employees, the court found, because certain county employees were required to remain on standby duty after working a shift and the parties' Memorandum of Agreement did not contain language "to suggest time was deducted for meal periods or 'regularly scheduled sleeping periods,' " the regulation did not permit the hours to be deducted. Because of the nature of the employees' backup duty, the Ninth Circuit affirmed the factual finding this type of duty constituted hours worked.
 
 
 21
 Second, while there is a line of cases finding an implied agreement when the employee does not protest the overtime policy, see, e.g., Bodie, 934 F.2d at 563; Rousseau v. Teledyne Movible Offshore, Inc., 805 F.2d 1245 (5th Cir.1986), cert. denied, 484 U.S. 827 (1987), in each of these cases, there was an agreement communicated to the employees.[6] That finding motivated the Fourth Circuit to come to a different conclusion in Johnson v. City of Columbia, S.C., 949 F.2d at 131, a case arising out of the same facts as Bodie. In Johnson, the court found the city created an express agreement after its employees contemporaneously protested a proposed work schedule. Plaintiff's continued disagreement with the city's policy further negated the post facto agreement the city forced employees to sign as a condition of continued employment.
 
 
 22
 Only by resolving the factual question whether there was a meeting of the minds to create the policy of deducting sleep and meal times can the trier of fact proceed to determine the legal question whether an implied contract existed in this case. None of the testimony of supervisors' instructing employees how to fill in their time sheets; on employees' reactions; or on whether employees acquiesced to the schedule can supply that essential fact. Moreover, as noted, the FLSA mandates proof of that essential component-the existence of an agreement-under 207(a).
 
 
 23
 We therefore REVERSE the district court's order granting summary judgment in favor of the City. We REMAND this action for the full resolution of the factual issues.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 29 U.S.C. 207(a)(1) states:
 Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 [3]
 Firefighter dispatchers referred to their time on duty on the switchboard as "on the board"; and that, off duty, as "off the board."
 
 
 [4]
 This document stated:
 Captain on each shift records work hours and non-work hours on the daily work/time records form (Meal periods and rest periods).
 Daily work cycle/time record is forwarded to Fire Admin. on or before payroll Thursday using the 40 hours work cycle.
 If dispatchers are on duty from pay period to the next without being absent ... they will receive two (2) hours overtime.
 ....
 If a dispatcher is requested by the supervisor while on the second five-hour rest period, five hours will be added as overtime.
 If a dispatcher is requested by the supervisor while on the one-hour meal periods, one hour will be added as overtime.
 
 
 [5]
 In one interchange, the City's representative told the Union's representative, "You attempted to put language there [the collective bargaining agreement] for it. It is two hours of overtime every three weeks." The Union's agent replied, "this whole package was designed to cut your exposure and an incentive to get this thing worked out. The language may not be broad enough to cover it but the intent was there. I went to the CFR and read them. The hangup was in the overtime pay."
 
 
 [6]
 Similarly, in Morehead v. City of Pearl, Miss., 763 F.Supp. 175, 176 (S.D. Miss.1990), the district court dismissed the firefighter's complaint the city violated the overtime provisions of the FLSA upon finding evidence that every firefighter had signed the agreement covering overtime and had made the choice between a 24-hour, 10 minute schedule and an 8 hour work day