Brett L. **BAYLES**, Michael P. Frey, Jeralyn Johansen, Steven J. Nelson, Jeffrey S. Turner, James Reynolds, Steve Dunn, on behalf of themselves and others similarly situated. Plaintiffs,

v.

**AMERICAN MEDICAL RESPONSE OF COLORADO, INC., a Delaware corporation. Defendant.**

Civil Action No. 94–B–2300.

United States District Court, D. Colorado.

Sept. 4, 1996.

Donna Dell'Olio, Cornish and Dell'Olio, Colorado Springs, CO, for Plaintiffs.

John R. Webb, Holme Roberts & Owen, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs bring this action against the American Medical Response Center (AMR) alleging violations of the Fair Labor and Standards Act (FLSA), 29 U.S.C. § 201 et seq., for failure to pay them for meal time, sleep time, and hours worked in excess of forty per week at a rate of one-and-a-half times regular pay. Reed Ambulance, Inc. (Reed) is the predecessor of AMR. It is undisputed here that Reed's pay practices are imputed to AMR as Reed's successor.

The following motions are at issue:

1) AMR's motion to strike plaintiffs' affidavits in support of summary judgment;

2) Plaintiffs' motion to strike documents filed in support of motion for summary judgment on exclusion of meal times;

3) Plaintiffs' motion for summary judgment;

4) AMR's cross-motion for summary judgment;

5) AMR's motion for summary judgment on the statute of limitations;

6) AMR's motion for summary judgment on plaintiff David Sanko's claims; and

7) Plaintiffs' motion to dismiss defendant's second, third, fifth, seventh, eighth, twelfth, thirteenth, fifteenth, and sixteenth affirmative defenses.

### I. Preliminary Motions.

#### A.

AMR moves to strike plaintiffs' affidavits arguing that plaintiffs wrongfully invoked the attorney-client privilege in their objections to questions regarding "the process through which the affidavit[s]" were made. AMR contends that the questions were probative of the accuracy of plaintiffs affidavits and, therefore, it was denied the opportunity to explore contradictions between language in the affidavits and the affiants' true understanding of the facts. AMR's allegations are based on the "limited number and extremely [uniform] adjectives used" in describing events while working which, it contends, casts doubt on the affiants' credibility.

Fed.R.Civ.P. 30(d)(1) states: "A party may instruct a deponent not to answer only when necessary to preserve a privilege...." If AMR had a proper objection to plaintiffs' failure to respond it should have moved to compel pursuant to Fed.R.Civ.P. 37(a)(2)(B). AMR did not do so. Instead, AMR seeks to have the affidavits stricken pursuant to Fed. R.Civ.P. 56(g) which states:

Should it appear to the satisfaction of the court at anytime that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to

the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Having failed to file a motion to compel, I have no basis on which to make a determination on whether these affidavits were in fact filed in "bad faith." Furthermore, Rule 56(g) does not provide the remedy sought by AMR. Accordingly, the motion will be denied.

### B.

Plaintiffs move to strike documents attached to AMR's reply to plaintiffs' response in opposition to summary judgment on the issue of meal time compensation because the court did not grant AMR leave to file these additional documents. Plaintiffs contend that AMR has denied them the opportunity to challenge the affidavits under Fed. R.Civ.P. 56(e). However, the motion to strike adequately sets forth plaintiffs' objections to these documents and, thus, I will treat it as a surreply. Accordingly, the plaintiffs' motion to strike will be denied.

### II.

The following undisputed facts are relevant to the determination of the motions for summary judgment. AMR's predecessor, Reed, operated an ambulance service until it merged with Ambulance Service Company in September of 1993. In October 1993, Ambulance Service Company changed its name to American Medical Response of Colorado, Inc. Before August 1, 1993, Reed scheduled its ambulance crews to work approximately ten, twenty-four hour shifts per month. Before August 1, 1992, Reed deducted three hours per shift for meals. After August 1, 1992, it deducted two hours per shift. If an employee was unable to enjoy a meal break during the designated meal period, he could submit an extra time slip requesting compensation. Management would then review the call out records to determine whether the employee had sufficient time between calls to enjoy a meal.

Reed also deducted eight hours from each twenty-four hour shift for sleep time. If ambulance crews were called to duty during this time, they were paid for time worked rounded to the nearest half hour as long as time worked exceeded fifteen minutes. When calls to duty amounted to more than 3½ hours, employees were paid for all eight hours. Thus, on average plaintiffs were paid for either thirteen or fourteen hours of work per twenty-four hour shift. Plaintiffs contend that Reed's failure to pay overtime compensation and deduction of meal and sleep time from hours worked violated the Fair Labor Standards Act.

### III.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

## IV.

A. Section 213(b) Exemption under the Motor Carrier Act.

The purpose of the FLSA is to ensure minimum wages and working conditions to workers in industries throughout the states. Generally, § 207(a)(1) of the FLSA requires than an employee who works more than forty hours in a workweek must be paid compensation at a rate of one and one-half times his regular pay for hours in excess of forty. 29 U.S.C. § 207(a)(1). Section 213 of the FLSA exempts certain job classes from this overtime pay requirement.

Reed argues that it is entitled to exemption under § 213(b)(1) which provides: "The provisions of section 207 [providing for overtime pay] of this title shall not apply with respect to—(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49." 29 U.S.C. § 213(b)(1). "The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act, ... and (2) engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passenger of property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a).

The employer bears the burden of establishing exemption from the FLSA. *Corning Glass Works v. Brennan,* 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). "[T]hese exemptions are to be narrowly construed against the employers seeking to assert them and their application is limited to those establishments plainly and unmistakenly within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Plaintiffs and AMR cross-move for summary judgment on the application of § 213(b) to ambulance services. I conclude that this is a clear question of law appropriate for determination on summary judgment.

Plaintiffs argue that AMR is not entitled to exemption under § 213(b)(1) because it was not engaged in interstate commerce and was not subject to regulation under the Motor Carrier Act (M.C.A.). Plaintiffs first contend that AMR's interstate travel was de minimus. They present undisputed evidence that .7% or less of the total ambulance/cabulance trips made by AMR were interstate trips. Thus, because AMR was not engaged in interstate commerce, plaintiffs contend that it is not subject to regulation under the M.C.A. and, therefore, not entitled to the § 213(b) exemption.

In *Morris v. McComb,* 332 U.S. 422, 431–32, 68 S.Ct. 131, 135–36, 92 L.Ed. 44 (1947), the Supreme Court determined that "it is 'the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [DOT's] power to establish reasonable requirements with respect to

qualifications, maximum hours of service, safety of operation and equipment.'" (quoting *Levinson v. Spector Motor Service*, 330 U.S. 649, 674–75, 67 S.Ct. 931, 944, 91 L.Ed. 1158 (1947)). "The test is a practical one of whether the employee's activities affect interstate commerce." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955). My focus is qualitative, not quantitative, in that I look to the character of AMR's activities not the amount of interstate travel.

Plaintiffs rely on decisions from the Ninth and Eleventh Circuits in support of their argument that ambulance services are not subject to the M.C.A.. In *Jones v. Giles*, 741 F.2d 245, 248–49 (9th Cir.1984), the Ninth Circuit rejected the Sixth Circuit's reasoning in *Benson v. Universal Ambulance Service, Inc.*, 675 F.2d 783 (6th Cir.1982), finding that ambulances are "not the sorts of transportation that require national regulation." Instead, the Ninth Circuit relied on the Interstate Commerce Commission's (ICC) decision in *Lonnie W. Dennis*, 63 M.C.C. 66 (1954), in which the ICC held that "ambulance service implies emergency situations and a freedom of movement and that public interest mandates that ambulances be sent over the most practicable routes to whatever destinations their services may be needed, irrespective of any limitations upon their operating authority." *Jones v. Giles*, 741 F.2d at 249 (citing *Lonnie W. Dennis*, 63 M.C.C. at 70). In *Spires v. Ben Hill County*, 980 F.2d 683, 686–87 (11th Cir.1993), the Eleventh Circuit adopted the reasoning of the Ninth Circuit emphasizing that the reasoning of *Lonnie W. Dennis* had been specifically adopted by the Department of Transportation as reflected in the Federal Motor Carrier Safety Regulations. Section 390.3(f) excepts "The transportation of human corpses or sick and injured persons" from coverage under its rules. Thus, the Secretary of Transportation had no jurisdiction over ambulance services.

AMR, in contrast, cites *Benson v. Universal Ambulance Service, Inc.*, 675 F.2d 783, 786 (6th Cir.1982) (holding that ambulance service employees were subject to the M.C.A. not the FLSA), for the proposition that ambulance service employees "affect" interstate commerce. There the Sixth Circuit relied on the fact that plaintiffs transported sick and injured persons to and from airports for interstate travel in holding that the ambulance service was engaged in interstate commerce. The Sixth Circuit stated "It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle."

AMR argues that the effect of § 390.3(f)(4)'s exemption is to release ambulance services from complying with the Federal Motor Carrier Safety Regulations but it does not remove ambulance services from the jurisdiction of the Secretary of Transportation. AMR argues that the Supreme Court's holding in *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) supports this conclusion.

In *Morris v. McComb*, the Supreme Court addressed two issues: (1) whether the I.C.C. (now D.O.T.) had the power to establish qualifications and maximum hours for mechanics and drivers of a common carrier when the carrier's interstate commerce services amounted to 4% or less of the total services performed; and (2) If the I.C.C. had such power, whether the overtime requirements of the FLSA applied in light of the exemption under § 213(b). "It was stipulated that the petitioner was 'engaged as a common carrier for hire in the local transportation of property by motor vehicle,' was 'engaged in a general cartage business and * * * (was) prepared to render services to the general shipping public.'" *Id.* at 432–33, 68 S.Ct. at 136. Noting that the Commission had made no exception to the qualifications and maximum hours of service that would exempt the petitioner class, the Supreme Court held:

> [T]he Commission has the power to establish qualifications and maximum hours of service, pursuant to the provisions of § 204 of the Motor Carrier Act, for the entire classification of petitioner's drivers and mechanics and it is the existence of that power (rather than the precise terms of the requirements actually established by the Commission in the exercise of that power) that Congress has made the test as to whether or not § 7 of the Fair Labor

Standards Act is applicable to these employees.

AMR argues that the exemption for "the transportation of human corpses or sick and injured persons" found in the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 309.3(f)(4), does not, therefore, take away the power of the D.O.T. to establish other qualifications, including the maximum hours of service, for ambulance services. AMR says that simply because the D.O.T. has failed to exercise that power does not mean the power does not exist.

AMR further contends that the D.O.T. specifically rejected the *Lonnie Dennis* decision in an Opinion Letter by the Wage and Hour Administrator dated January 30, 1979. The Opinion Letter states: "The Department of Transportation has recently advised us, however, that it does not consider the Interstate Commerce Commission's determination of lack of jurisdiction for economic regulation to be determinative of that Department's jurisdiction to regulate qualifications and hours of service [for ambulance services] under the safety provisions of the Motor Carrier Act of 1935."

However, in *Levinson v. Spector Motor Service*, 330 U.S. 649, 661, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947), the Supreme Court made it clear that the FLSA and the MCA are mutually exclusive acts. Therefore, if AMR is exempt from the MCA it is subject to the FLSA.

■ In *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 438–39 (9th Cir. 1982), plaintiffs, tour bus drivers for tourists on the island of Oahu, sought overtime compensation under the FLSA. In 1950, the Commission had exempted motor carriers in the state of Hawaii from complying with the MCA. The employer argued that the exemption from the MCA did not entitle plaintiffs to coverage under the FLSA because the ICC retained the power to revoke the exemption. The Ninth Circuit disagreed, holding that where a motor carrier was exempt from the MCA regulations they became subject to the FLSA. *Id.* at 440 (citing *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947). I hold that section 390.3(f) exempts ambulance services from all

requirements of the MCA. *See also* 53 FR 18049 (1988). Consequently, AMR is subject to the FLSA.

■ I am not persuaded that the January 30, 1979 Opinion Letter by the Wage and Hour Administrator undermines the rationale of *Jones* and *Spires*. As stated by the Sixth Circuit in *Benson*, "It is clear that the agency with whose interpretation the exemption in issue is concerned is not the Department of Labor, but rather the Department of Transportation. It has been held that interpretive regulations of the Wage and Hour Division do not control interpretation of the Motor Carrier Act." *Benson*, 675 F.2d at 785. Because the Opinion Letter was issued by the Wage and Hour Division of the Department of Labor, its authoritative value is questionable. More relevant and persuasive are the Federal Motor Carrier Safety Act regulations which reflect the Department of Transportation's own interpretation of its power and authority. "An agency's interpretation of a statute for which it is primarily responsible to implement is entitled to considerable deference." *Jones v. Giles*, 741 F.2d at 249. The Department of Transportation's interpretation of its powers is clearly reflected in the Federal Motor Carrier Safety Regulations which exempts ambulance service from coverage under the MCA.

This analysis is also consistent with the Supreme Court's mandate in *Morris v. McComb*, 332 U.S. 422, 431–32, 68 S.Ct. 131, 135–36, 92 L.Ed. 44 (1947) that it is the "character" of the activities which determines the need for regulation by the D.O.T. Here, the movement of passengers or goods from one point to another is not the primary purpose of the service offered. Rather, the purpose is to provide medical attention to individuals who need emergency treatment in hospital facilities. Contrary to other businesses which are properly covered under the MCA, ambulance services have no regular schedules or routes. Ambulance operations are usually centrally located serving an area in close proximity to hospital facilities. Moreover, uninhibited freedom of passage is paramount for efficient and effective ambulance operations. These factors make na-

tional regulation impracticable. The Federal Highway Administration, DOT, recognized that national regulation of emergency vehicles would not serve the purposes of the MCA when it stated: "The FHWA believes that the safety regulation of emergency vehicles is best left to State and local government." 53 FR 18050 (1988). The regulations, history and purpose of the MCA read *in pari materia* point to the conclusion that ambulance services are not subject to the MCA. Thus, Reed is not entitled to exemption under § 213(b) of the FLSA and plaintiffs are entitled to overtime compensation. Accordingly, I will grant summary judgment in favor of plaintiffs on the § 213(b)(1) exemption issue and deny AMR's motion for summary judgment on plaintiffs' overtime claim.

### B. Exclusions for meal time

Before August 1, 1992, Reed deducted three hours from each twenty-four hour shift for meal times and after August 1, 1992, it deducted two hours for meal times. During meal times, employees remained on duty with their partner and maintained radio contact with their dispatch center. Zordani Aff. ¶ 3. They did not have to remain on premises, but were required to stay with or near the ambulance and within the district. Plaintiffs could eat at restaurants or run personal errands during the meal period. If the meal period was interrupted, an employee was only entitled to compensation if there was no forty-five minute period within the designated meal period during which he could have eaten. Meal periods were designated as follows: breakfast, 6:00 a.m. through 11:00 a.m.; lunch, 11:00 a.m. through 4:00 p.m., and; dinner, 4:00 p.m. through 9:00 p.m.. Fiest Depo., p. 31.

Although most ambulance drivers and attendants called the communications center when beginning a meal break, no record was kept of the meal period. See Vigil Aff., ¶ 13. Meals were frequently interrupted to respond to calls or provide coverage to other districts. Vigil Aff., ¶ 12, Walker II Aff., ¶ 3(f). When an employee did not receive a meal break, to be compensated he was required to submit an "extra time slip" documenting the missed meal. Management would then review the call out records to determine whether the employee was entitled to payment. Fiest Depo. p. 34. Reed would "take a look at the trip numbers listed on the extra time slip, start and finish times of the call, and determine whether they had an uninterrupted hour during that block of time." Id. Reed's policy manual states "When one (1) hour is designated for a meal time and you receive thirty (30) minutes or less meal time will begin over. Forty-five (45) minutes will constitute an hour." Reed Policy Manual, p. 19.

Plaintiffs and AMR cross-move for summary judgment on whether AMR complied with the FSLA when it excluded meal times from pay. Plaintiffs argue that they are entitled to compensation because they remained on call and their duties were the same during meal times. To the contrary, AMR contends that plaintiffs are not entitled to compensation because the meal period was not spent primarily for the employer's benefit.

The Department of Labor determines when meal times are compensable under the FLSA. The Code of Federal Regulations provides:

> "Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purpose of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a).

The Tenth Circuit has interpreted the phrase "completely relieved from duty" to mean "when the employee's time is not spent predominantly for the benefit of the employer." *Bates v. Dept. of Corrections of State of Kan.*, 81 F.3d 1008, 1011 (10th Cir.1996). An employee is entitled to compensation for meal times when he cannot enjoy his meal time because his attention is focused on work responsibilities. *Id.* However, where an employee's attention is predominantly spent

on personal activities such as eating or relaxing, the employee is relieved from duty and, therefore, not entitled to compensation. *Id.*

AMR cites *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145 (10th Cir.1992), in support of its contention that plaintiffs' meal periods were not spent predominantly for AMR's benefit. In *Lamon,* police officers received a thirty minute meal period which was deducted from their pay. During meal time officers were relieved of patrol duties but subject to call. *Id. at* 1149. They were required to respond to citizen requests or inquiries, respond to crimes committed in the their presence and act in a responsible, professional manner. *Id.* at 1149. The Tenth Circuit reversed a jury verdict that the meal period was compensable based on an improper instruction which "countenanced the misapprehension that the performance of any official duty, no matter how insignificant, during meal periods rendered the time compensable." *Id.* at 1158. Simply because an officer was on-call with limited responsibilities did not require a finding that the officer's time was spent "predominantly for the benefit of the employer." *Id. at* 1157.

Plaintiffs argue that under the Tenth Circuit's decision in *Renfro v. City of Emporia, Kan.,* 948 F.2d 1529 (10th Cir.1991), they are entitled to compensation for meal times. In *Renfro* fire fighters only received compensation for actual time on duty. They sought compensation for all on-call time because they were effectively precluded from pursuing or engaging in other activities while on-call. The City stipulated that the fire fighters were called to duty between zero and thirteen times a day and averaged approximated three to five called per day. The Tenth Circuit held that given the frequency of the calls, the fire fighters time waiting for calls benefitted the employer and was, thus, compensable under the FLSA. *Id. at* 1538. Because the on-call time constituted a twenty-four hour "tour of duty," regulations applicable to fire fighters required that they be compensated for all meal times. *Id. at* 1539; 29 C.F.R. § 553.223(c). Thus, § 785.19(a) was never applied in *Renfro.*

Ambulance employees' entitlement to compensation for meal times was addressed in *Burnison v. Memorial Hosp., Inc.,* 820 F.Supp. 549 (D.Kansas 1993). In *Burnison,* plaintiffs, emergency medical technicians and paramedics, sought compensation for two thirty minute, in shift, meal periods. *Id. at* 556. During meal periods, they were permitted to leave the premises but could only patronize drive through restaurants and could not eat at home. Plaintiffs had to respond to all emergency calls during these meal periods. When their meal was interrupted by a call to duty, plaintiffs were paid overtime. *Id. at* 556. The district court determined that the limited restrictions and responsibilities placed on plaintiffs during meal times were reasonably related to their obligation to be on-call and did not require the employees to perform work duties during meal times. Therefore, plaintiffs were denied meal time compensation. *Id. at* 557.

Applying the predominant benefit test to the facts here, I believe that this case is most analogous to and governed by *Lamon* and *Burnison.* Plaintiffs had limited responsibilities and minimal restrictions placed upon them during meal times. Plaintiffs have enjoyed a greater amount of freedom to pursue personal errands or "eat out" during their meal periods than did the plaintiffs in *Burnison.* Similar to *Lamon,* plaintiffs have been subject to call with only limited responsibilities imposed during the meal break.

Plaintiffs next argue that they are entitled to compensation for meal times because AMR failed adequately to keep records of its employees meal breaks. Plaintiffs cite *Donovan v. White Beauty View, Inc.,* 556 F.Supp. 414 (M.D.Pa.1982), *Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113 (4th Cir.1985), and *Bingham v. Airport Limousine Service,* 314 F.Supp. 565 (D.Ark.1970) for the proposition that AMR's failure to keep records of when meal breaks were taken, whether they were interrupted, and when they were completed violates the FLSA. Plaintiffs correctly assert that in these cases the employers were required to compensate their employees for meal times because meal times were not properly documented. Based on the absence of records, the courts were unable to make adequate damage assessments. Therefore,

plaintiffs were entitled to compensation for all meal times.

Although AMR did not keep records of meal breaks, it did keep records of time out on calls. If plaintiffs were denied an opportunity to have a meal, they had the right to submit time slips claiming compensation for lost meal time. By evaluating plaintiffs' claims for lost meal time in light of AMR's records of calls out, AMR could determine whether an employee received an adequate meal break. AMR's records are adequate in this respect.

■■■ Given the sporadic nature of ambulance service calls, AMR's meal time pay policy is consistent with the purposes of the FLSA. As determined by the Tenth Circuit in *Bates v. Dept. of Corrections*, 81 F.3d 1008 (10th Cir.1996), under § 785.19 a meal period does not have to be scheduled and occur at a regular time to be "bona fide." The focus of the analysis is whether the employee can comfortably and adequately pass the meal time. I conclude that no reasonable juror could find that plaintiffs' meal time was spent predominantly for the benefit of AMR. Consequently, I will grant AMR's motion for summary judgment and deny plaintiffs' motion for summary judgment on the meal time claim.

C. Sleep Time Exclusion.

Pursuant to Reed's pay policy, eight hours of time was deducted from each twenty-four hour shift for sleep time. If employees were called to duty during a sleep time period, they were paid for time worked rounded to the nearest half hour if the work exceeded fifteen minutes. When calls to duty amounted to more than 3½ hours, employees were paid for a full eight hours.

When an employee works twenty-four hour shifts, an employer may deduct up to eight hour of sleep time per shift under certain conditions. Department of Labor regulations provide:

(a) General. Where an employee is required to be on duty for 24 hours or more, the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

(b) Interruptions of sleep. If the sleep period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time. 29 C.F.R. § 785.22.

Plaintiffs first argue that there was no express or implied agreement to exclude sleep time from hours worked. Plaintiffs argue that receiving a paycheck is not enough to prove the existence an implied contract. *International Ass'n of Firefighters, Local 349 v. City of Rome, Ga.,* 682 F.Supp. 522 (N.D.Ga.1988). Moreover, plaintiffs state that Reed told its employees that its pay practices were approved by the Department of Transportation. Thus, plaintiffs assert that any implied agreement was based on a material misrepresentation and is, therefore, void. AMR argues that under the undisputed facts here, as a matter of law, there was an implied agreement to exclude sleep time from hours worked. Because the pay policy was in effect before the employees began working, plaintiffs had ample opportunity to discuss the terms of their employment before accepting their employment. *See Rotondo v. City of Georgetown, S.C.,* 869 F.Supp. 369 (D.S.C.1994). Furthermore, because the plaintiffs failed to make a formal protest to the pay policy they have acquiesced to it. AMR argues that informal complaints are insufficient to defeat an implied agreement to its policy. *See Ariens v. Olin Mathieson Chemical Corp.,* 382 F.2d 192 (6th Cir.1967).

In *Brown v. City of Oklahoma,* 45 F.3d 439, 1994 WL 721389 (10th Cir.1994) (unpublished opinion), the Tenth Circuit addressed the existence of implied agreements under the FLSA. In *Brown,* fire fighter dispatchers entered into negotiations with the City in 1986 to preserve a twenty-four hour shift schedule. The City agreed to maintain this schedule but insisted that sleep and meal times would have to be deducted from the total hours worked. *Id. at* 1. The resulting schedule was never memorialized but fire fighter dispatchers operated pursuant to this schedule for six years. The district court emphasized that the dispatchers followed the schedule for six years without complaint in determining that there was an express or implied agreement to exclude sleep and meal time from hours worked. Reversing the district court, the Tenth Circuit stated "Only by resolving the factual question whether there was a meeting of the minds to create the policy of deducting sleep and meal times can the trier of fact proceed to determine the legal question whether an implied contract existed in this case." *Id.* at 4.

▮▮▮▮ Under Colorado law, the existence of an expressed or implied contract depends on words or conduct which evidence a mutual intention to contract. *DCB Construction Co., Inc. v. Central City Development Co.,* —— P.2d ——, ——, 1996 WL 414188, 2 (Colo.App.1996). Here, AMR's sleep time pay policy, on its face, does not comply with the FLSA, because under § 785.22(b), when an employee does not receive a minimum of five hours sleep he must be compensated for the entire eight hour period. AMR did not compensate its employees for the full eight hours unless working time exceeded 3½ hours. Thus, AMR required plaintiffs to work an additional half hour before compensating them as required by the regulations. Moreover, plaintiffs present evidence that they protested the pay policy and that some plaintiffs were told that the pay policy complied with D.O.L. regulations. There are numerous factual issues that must be resolved to determine whether there was a meeting of the minds regarding the deduction of sleep time from hours worked. Consequently, I will deny AMR's motion for summary judgment on the existence of an express or implied agreement to exclude sleep time.

Plaintiffs next argue that because they were unable to enjoy an uninterrupted night's sleep they are entitled to compensation for the entire eight hour period. Interruptions were caused by calls to duty, scanners left on, fire station calls unrelated to ambulance service calls, and calls for other crews within the same quarters. Plaintiffs further assert that they performed duties during the night for which they received no work credit. AMR denies that interruptions, other than calls to duty, were significant enough to preclude plaintiffs from enjoying an uninterrupted night's sleep as defined by the regulations.

▮▮▮▮ "The ultimate determination of whether or not sleeping time is work time presents a mixed question of law and fact." *General Electric Co. v. Porter,* 208 F.2d 805, 814 (9th Cir.1953). Here there are multiple disputed issues of fact regarding whether plaintiffs were able to enjoy an uninterrupted night's sleep as defined by the FLSA. Consequently, plaintiffs' motion for summary judgment on the sleep time claim will be denied as well.

### V.

Plaintiffs and AMR cross-move for summary judgment on the "good faith" defense under FLSA § 259. AMR asserts the good-faith defense to all claims raised by plaintiffs.

Section 259 provides:

In any action or proceeding based on any act or omission . . ., no employer shall be subject to liability or punishment for . . . failure of the employer to pay . . . overtime compensation under the Fair Labor Standards Act . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section [the Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement

policy of such agency with respect to the class of employers to which he belonged.

AMR argues that even if it is not entitled to exemption under § 213(b), plaintiffs' claims fail as a matter of law under the "good faith" defense because it relied on and acted in conformity with Department of Labor interpretations in claiming the § 213(b) exemption. AMR proffers a letter dated February 26, 1979 from Gerald H. Hill, assistant area director for the wage and hour division, to Reed Ambulances, Wage Hour Publication 1327 which addresses ambulance service establishments under the FLSA (Ambulance Pamphlet), and Interpretative Bulletin 782 on which it contends Allen Powers, owner of Reed, relied when forming and maintaining Reed's pay policies, all of which were received in 1979. AMR asserts that over the years, Allen Powers acted as a reasonable person in relying on these documents as well as on advice from counsel regarding Reed's pay practices.

By its terms, the § 259 defense is available only where a defendant can show good faith conformity with and reliance on any written administrative regulation, order, ruling, approval, or interpretation. The only written material AMR presents as a basis for good faith reliance was received in 1979. All other representations made to Allen Powers were made verbally. Plaintiffs dispute whether reliance on these materials was in good faith and further asserts that their employer's actions were not in compliance or conformity with the DOL materials in question. That a genuine dispute of fact exists is further evidenced by AMR's sleep time policy which on its face is inconsistent with D.O.L. regulations. The question of good faith reliance is fact intensive and implicates in part a question of credibility for the trier of fact. Accordingly, both plaintiffs' and Reed's motion for summary judgment on the § 259 defense will be denied.

## VI.

Section 255 of the FLSA sets forth the applicable statute of limitations for actions under the FLSA. It provides that any action for unpaid overtime compensation or liquidated damages under the FLSA:

May be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

Plaintiffs filed their complaint on April 18, 1994. Under the FLSA, a cause of action accrues at the end of each regular workday. *Freeman v. National Broadcasting Co. Inc.*, 846 F.Supp. 1109 (S.D.N.Y.1993). Thus, if AMR's conduct was willful, plaintiffs are entitled to damages, if proven, commencing April 18, 1991. If not, plaintiffs are entitled to damages commencing April 18, 1992.

AMR argues that plaintiffs are not entitled to the three year limitation period because it did not willfully violate the FLSA. To be entitled to the three year statute of limitations plaintiffs must prove that the employer's conduct was willful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). In order to establish willfulness, plaintiffs must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133, 108 S.Ct. at 1681.

During the relevant time frame there was a split of authority among the circuits and no Tenth circuit authority regarding the application of the § 213(b) exemption to ambulance services. AMR proffers undisputed evidence that Allen Powers sought advice from the D.O.L. and counsel regarding whether Reed's pay policies on overtime compensation complied with the FLSA. Although AMR chose the alternative most advantageous to it, this does not make its actions "willful." In light of the conflicting state of the law, plaintiffs cannot meet their burden of establishing that AMR knew or showed reckless disregard for whether its overtime pay policy was prohibited by the FLSA. Therefore, I conclude that no reasonable juror could find that AMR's conduct regarding overtime pay was willful. Accordingly, I will grant summary judgment in favor of AMR on the application of the three

year limitations to the overtime pay claim. Therefore, the two year statute of limitations will be applicable to the overtime pay claim.

■ With regard to sleep time, the regulations clearly and unequivocally state that an employee must receive at least 5 hours of sleep or be compensated for the entire eight hour period. 29 C.F.R. § 785.22. AMR's policy manual states that the employee will only be paid for eight hours if minutes worked during the sleep period exceeds 211 minutes or 3½ hours. On its face, this policy fails to comply with the FLSA. In support of its argument for summary judgment on the "good faith" defense under § 259, AMR claimed that Allen Powers relied on Wage and Hour Publication 1327 in determining that Reed's policies complied with the FLSA. That publication states, "If the employee does not get at least five hours of sleep during the scheduled sleeping period, the entire time is working time." Wage and Hour Publication 1327, p. 7. Allen Power's acknowledgment of this publication and assertion of reliance on it creates a factual issue of whether he knew or showed reckless disregard for whether Reed's sleep time policy violated the FLSA. Accordingly, I will deny AMR's motion for summary judgment on the application of the three year statute of limitations for sleep time. Thus, plaintiffs may be entitled to damages, if proven, for sleep time from April 18, 1991.

### VII.

AMR argues that David Sanko's claims are barred by 29 U.S.C. § 213(a)(1) which provides an exemption for executive or administrative employees. This plaintiff concedes that if the defense had been asserted in the answer, such defense would have been meritorious. AMR requested and was granted leave to amend its answer to assert this defense. Consequently, I will grant summary judgment in favor of Reed on David Sanko's claims.

### VIII.

Plaintiffs move to dismiss AMR's second, third, fifth, seventh, eighth, twelfth, thirteenth, fifteenth, and sixteenth affirmative defenses. AMR agrees to withdraw its sec-

ond, third, seventh, eighth, twelfth, fifteenth, and sixteenth affirmative defenses. AMR maintains that it has a defense for waiver and estoppel (fifth affirmative defense) and for failure to report overtime allegedly worked and performance of unauthorized work (thirteenth affirmative defense).

Plaintiffs argue that waiver and estoppel is available only where the employee falsely reports hours worked and the employer has no constructive knowledge or reason to know about the out-of-shift overtime work or work at home. AMR argues that plaintiffs may be barred by estoppel or waiver for failing to file requests for overtime pay pursuant to company policy. *See Wahl v. City of Wichita, Kansas,* 725 F.Supp. 1133 (D.Kan.1989).

The only affirmative duty plaintiffs had regarding reporting overtime or additional time relates to meal time compensation. The grant of summary judgment in favor of AMR on this issue, therefore, abrogates the need for the estoppel/waiver defense.

Plaintiffs argue that AMR's thirteenth affirmative defense is simply a restatement of AMR's fifth affirmative defense. I agree. AMR's fifteenth affirmative defense states that plaintiffs are not entitled to overtime compensation because they failed to report or had no authorization for such time. This is no different from stating that plaintiffs waived their right to compensation for failure to submit overtime slips or request additional time. Accordingly, the motion to dismiss will be granted as to fifth and thirteenth affirmative defenses.

### IX. Conclusion

After a determination of the outstanding motions, plaintiffs' remaining claims are for overtime and sleep time pay under the FLSA. Damages for overtime pay, if proven, will be limited to those proven commencing August 18, 1992. Plaintiffs entitlement to damages for sleep time will depend on the willfulness determination. If plaintiffs prove that AMR knew or showed reckless disregard for the fact that its sleep policy violated the FLSA then they will be entitled to damages, if proven, for sleep time pay from August 18, 1991. If AMR's acts were not willful then plaintiffs will be limited to dam-

ages commencing August 18, 1992. Plaintiffs' claims, however, are subject to the "good faith" defense under § 259, which, if proven by the defendant, will bar plaintiffs' claims.

Accordingly it is ORDERED that:

1) Defendant's motion to strike plaintiffs' affidavits in support of summary judgment is DENIED;

2) Plaintiffs' motion to strike documents filed in support of motion for summary judgment on exclusion of meal times is DENIED;

3) Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part;

4) Defendant's cross-motion for summary judgment is GRANTED in part and DENIED in part;

5) Defendant's motion for summary judgment on the statute of limitations is GRANTED in part and DENIED in part;

6) Defendant's motion for summary judgment on plaintiff David Sanko's claims is GRANTED; and

7) Plaintiffs' motion to dismiss defendant's second, third, fifth, seventh, eighth, twelfth, thirteenth, fifteenth, and sixteenth affirmative defenses is GRANTED.